**Ralph Clinton BURDEN, Jr., Appellant,**

v.

**The STATE of Texas.**

No. 1698–99.

Court of Criminal Appeals of Texas.

Sept. 19, 2001.

---

Michael Maness, Houston, for Appellant.

Karen R. Wise, Asst. DA, Dallas, for State.

### OPINION

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HERVEY, and HOLCOMB, JJ., joined.

The appellant was convicted of promotion of obscenity. On petition to this court, the appellant argues that because he did not know that the videotape in question was obscene, the evidence is legally insufficient to support his conviction. The appellant also argues that the Court of Appeals erroneously upheld the trial court's exclusion of comparable pornographic evidence from the internet. Because the statute requires only knowledge of the material's character and content, and not knowledge of its legal status as obscene, we hold that the evidence is legally sufficient. Furthermore, because the defendant failed to show a reasonable degree of community acceptance of the internet images, the trial court did not err in excluding the proffered evidence and testimony. Accordingly, we shall affirm.

### Background

On October 9, 1996, Detective Reynerson, an undercover police officer in the Dallas Police Department's Vice Division, entered Star Adult Video Center. After viewing a display of videotape boxes, Reynerson selected the videotape box for "Hardcore Schoolgirls Volume 5" and presented the box to the appellant, who was the sales clerk. The appellant checked the videotape number on the side of the box, retrieved the videotape from the back of the video store, and then sold it to Reynerson. Reynerson later viewed the videotape and arrested the appellant for promotion of obscenity.

At trial, the videotape was played for the jury and the videotape box was admitted into evidence. The front of the box has several sexual statements, and the back of the box has sixteen pictures, eleven of which show sexually explicit scenes.[1] Reynerson testified that he had never purchased a videotape in which the activities pictured on the box were different from the activities depicted in the video, and

---

1. On the side of the box, where the videotape number is located, there is also a sexually explicit picture.

that he chose this videotape based on the pictures on the box.[2] In Reynerson's opinion, the videotape was obscene.

The appellant testified that the video store had between twenty-five and thirty thousand videotapes on site. The appellant testified that he knew the character of the films sold was sexually explicit and that he had a general understanding of what was on most of the videotapes. Although the appellant admitted he knew that some kind of sex act was depicted on all the videotapes, he testified that he did not know the exact content of this particular videotape.

Raymond Hill, a lobbyist and consultant for various sexually oriented businesses across Texas, testified for the defense concerning pornographic businesses in Texas and the materials sold at such businesses. Hill said that the images depicted on the videotape were not uncommon in the industry, and that the videotape was not obscene. Hill also testified concerning advertising for pornographic businesses in radio, billboard, and newspaper advertisements.

Outside the presence of the jury, the appellant proffered the testimony of Stanley Wilder, an internet web-page designer. Wilder testified that there were 225,000 sexually oriented internet sites and that anybody with a computer and modem could access those sites. He testified that the internet sites were available at the Dallas Public Library, but that he did not know of any efforts by library personnel to censor access to the internet. According to Wilder, many of the sites originated in foreign countries that did not regulate such sites. On a computer, Wilder displayed a slide show with images obtained from sexually oriented internet sites.

The State objected to Wilder's testimony and evidence as irrelevant. The trial court sustained the State's objection and excluded the evidence. The trial court explained that, even if the evidence was relevant, it would be excluded under Rule 403 as a needless presentation of cumulative evidence and as confusing and misleading to the jury.

Before the jury charge was read, the appellant made a bill of exceptions concerning Wilder's later trip to the library. During the appellant's testimony, Wilder had gone to the library. On a library computer, Wilder accessed the internet and viewed and downloaded material from the same internet sites that he had presented during his prior testimony. Wilder would have testified that the library made no effort to censor or prevent anyone from using its computers to find sexually explicit images on the internet. The trial court again excluded the evidence. The jury found the appellant guilty.

The Court of Appeals affirmed the conviction. *Burden v. State*, 1999 WL 562585, No. 05–97–01464–CR, slip op. at 5 (Tex. App.—Dallas August 3, 1999) (not designated for publication). The Court of Appeals held that the evidence was legally sufficient to establish that the appellant knew the character and content of the videotape. *Id.* at 3. The Court of Appeals concluded that the jury could have found that the appellant had knowledge of the videotape's character and content based on the other sexually explicit videos sold at the store, and based on the videotape's box that had pictures showing explicit sexual acts. *Id.*

The Court of Appeals further held that the trial court did not abuse its discretion in excluding Wilder's testimony and col-

---

**2.** The box pictured, among other things, anal intercourse, vaginal intercourse, male genitals in a state of arousal, and ejaculation into the mouth of a female.

lected images. *Id.* at 5. It held that evidence of internet pornography was already in the record through the testimony of Reynerson.[3] *Id.* The Court of Appeals also explained that the appellant's proffered evidence consisted of still pictures, not movies; that most likely the appellant's evidence did not originate in Dallas, but rather Holland or South America; and finally, that Wilder stated that he did not know what efforts, if any, the library had taken to censor access to the internet. *Id.*

We granted the appellant's petition to determine if the evidence was legally sufficient to support the conviction, and to determine whether Wilder's testimony and the internet images from the library were properly excluded.[4]

## Legal Sufficiency of the Evidence

In his first two grounds for review, the appellant argues that the evidence is legally insufficient to establish that he knew the videotape was legally obscene. The appellant argues that under *Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), in criminal prosecutions implicating First Amendment rights of free expression, the State must prove that a defendant had the requisite criminal scienter. The appellant asserts that the evidence must establish that the defendant knew or had "a reasonable basis for the belief that the sexually explicit material in issue actually exceed[ed] the limits of constitutional protection afforded by the First Amendment." Appellant's Brief at 7. In other words, the defendant must know that what he promotes is obscene. Because there was no evidence that the appellant knew or had reason to know that what he sold was so offensive on its face as to affront current community standards of decency, the appellant argues that the Court of Appeals erroneously held the evidence to be legally sufficient.

■ In conducting a legal sufficiency review, this Court examines all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.1997).

---

**3.** Detective Reynerson testified on cross-examination that a virtually endless supply of pornographic images, including images similar to those on the videotape, are available through the internet.

**4.** The actual grounds on which we granted review are:

1) The evidence is constitutionally insufficient to support the conviction, because the evidence fails to establish that petitioner knew the depictions of sexual acts in the videotape were so patently offensive on their face as to affront current community standards of decency.

2) The absence of any evidence from which the jury reasonably might have inferred, beyond a reasonable doubt, that petitioner knew the depictions of sexual acts in the videotape were so patently offensive on their face as to affront current community standards of decency rendered petitioner's conviction violative of the First and Four-

teenth Amendments to the constitution of the United States, since petitioner could not have had fair notice that the sale of the tape would constitute a criminal offense.

3) The trial court committed reversible error by excluding, as legally irrelevant or cumulative, testimonial and pictorial evidence that graphic, sexually explicit images are accessible on the internet from the City of Dallas public library computers, and that the library imposes no limitations or restrictions on such internet access.

4) The trial court violated petitioner's rights under the first amendment to the constitution of the United States, by excluding testimonial and pictorial evidence that graphic, sexually explicit images are accessible on the internet from the Dallas public library computers, and that the library imposes no limitations or restrictions on such internet access.

This standard is the same in both direct and circumstantial evidence cases. *See Green v. State,* 840 S.W.2d 394, 401 (Tex. Crim.App.1992).

■ Here, the appellant was charged with the offense of promotion of obscenity, specifically that "knowing its content and character, he promote[d] or possesse[d] with intent to promote any obscene material or obscene device." TEX. PENAL CODE § 43.23(c)(1). We will give effect to the plain language of a statute. *Boykin v.. State,* 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). We see nothing in the language of section 43.23(c)(1) that requires a defendant to have knowledge that what he promotes is legally obscene. All section 43.23(c)(1) requires is that a defendant have knowledge of the material's sexually explicit character and content. TEX. PENAL CODE § 43.23(c)(1). The plain language of the statute does not support the appellant's position.

Furthermore, we have held that the State has the burden to prove that a defendant had knowledge of the character and content of the material in question. *Carroll v. State,* 701 S.W.2d 913, 914 (Tex. Crim.App.1986) (citing *Davis v. State,* 658 S.W.2d 572 (Tex.Crim.App.1983)). In *Carroll,* the defendant alleged that the evidence was insufficient to establish that he had knowledge of the character and content of the allegedly obscene material. The evidence showed that the defendant had seen the cover of the material, had picked the material up at a United Parcel Service store, had unwrapped the material, and had placed it on a display stand with other sexually explicit magazines and videotapes. We held that this evidence was sufficient to show circumstantially that the defendant had knowledge of the character and content of the obscene material. *Carroll,* 701 S.W.2d at 915. Although we held that the defendant had knowledge of the character and content of the obscene material, we did not expressly deal with the issue of whether a defendant must know that what he promotes is legally obscene or the constitutional issues now raised by the appellant.

The current definition of obscenity in the statute tracks the *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), definition of obscenity.[5] *Compare* TEX. PENAL CODE § 43.21(a)(1), *with Miller,* 413 U.S. at 24–27, 93 S.Ct. 2607. Accordingly, this Court may look to Federal obscenity materials for guidance. *See, e.g., Berg v. State,* 599 S.W.2d 802 (Tex.Crim. App. [Panel Op.] 1980) (relying on, and analyzing extensively, United States Supreme Court obscenity cases).

The United States Supreme Court dealt with these same issues in *Hamling v. United States,* 418 U.S. 87, 119–24, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). In *Hamling,* the court's charge permitted the jury to find the defendant guilty if the defendant "knew the envelopes and packages containing the subject materials were mailed or placed ... in Interstate Commerce, and that [the defendant] had knowledge of the character of the materials." *Id.* at 119–20, 94 S.Ct. 2887. The defendant argued that the charge was improper because in order for a conviction under 18 U.S.C. § 1461 (mailing obscene materials) to be constitutionally sound, the government had to prove that the defendant had "awareness of the obscene character of the material."[6] *Id.* at 120, 94 S.Ct. 2887.

---

**5.** The current statute goes into somewhat greater descriptive detail in defining patently offensive representations than did the *Miller* court. *Compare* TEX. PENAL CODE

§ 43.21(a)(1)(B), *with Miller,* 413 U.S. at 24–27, 93 S.Ct. 2607.

**6.** 18 U.S.C. § 1461 provides in relevant part, "[whoever] knowingly uses the mails for the

The Court rejected the defendant's argument. The Court found *Smith v. California* to be distinguishable because that case involved a statute that completely dispensed with a scienter requirement. *Id.* at 121, 94 S.Ct. 2887. The Court held that knowledge of character and content was all that was required under the statute and the Constitution. *Id.* at 123–24, 94 S.Ct. 2887. The Court explained that, to "require proof of a defendant's knowledge of the legal status of the materials [as obscene] would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law. Such a formation is required neither by 18 U.S.C. § 1461 nor by the Constitution." *Id.; see also Ginsberg v. New York,* 390 U.S. 629, 644–45, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (finding constitutional a New York obscenity statute that defined the term knowingly as knowledge or reason to know "the character and content of the material"); *Rosen v. United States,* 161 U.S. 29, 41–42, 16 S.Ct. 434, 40 L.Ed. 606 (1896) (holding that the forerunner to 18 U.S.C. § 1461 did not require the defendant to know that the material could be classified as obscene, rather only knowledge of the character and content was required).

We agree with the *Hamling* Court. Nothing in section 43.23 or the United States Constitution requires a defendant to have knowledge that the material in question is legally obscene. The statute does not dispense with a scienter requirement and expressly states that a person commits an offense if, "knowing its content and character, he promotes . . . with intent to promote any obscene material or obscene device." Tex. Penal Code § 43.23(c)(1); *Davis,* 658 S.W.2d at 578. Accordingly, we hold that under section 43.23, the State need not prove that the

defendant knew the material in question was legally obscene; it is enough that the defendant had knowledge of the sexually explicit character and content of the material. *See Hamling,* 418 U.S. at 123–24, 94 S.Ct. 2887; *Carroll,* 701 S.W.2d at 914.

 In the instant case, the appellant admitted he knew the character of the videotape was sexually explicit and that he had a general understanding of what is on most of the videotapes in the video store. According to his own testimony, he was surrounded by thousands of sexually explicit videotapes. Furthermore, most of the videotape boxes that were displayed had pictures on them of scenes from the videotapes. It also appears that the video store sold nothing but sexually explicit materials. When Reynerson brought the videotape box to the appellant, the appellant checked the videotape number, retrieved the videotape, put it in the box, and sold it to Reynerson. Finally, the videotape box that Reynerson gave to the appellant, and in which the appellant later placed the videotape, had numerous sexually explicit pictures on it. Viewed in the light most favorable to the verdict, we hold that a reasonable jury could have found that the appellant had knowledge of the videotape's character and content.

### Exclusion of Internet Evidence

In his third and fourth grounds for review, the appellant argues that the Court of Appeals erroneously upheld the trial court's decision to exclude Wilder's testimony and internet images in reference to the library. Because this evidence addressed the contemporary community standards element of obscenity, the appellant argues that under *Carlock v. State,* 609 S.W.2d 787 (Tex.Crim.App. [Panel Op.]

mailing . . . of anything declared by this section . . . to be nonmailable [is guilty of an

offense]." *Hamling* 418 U.S. at 119, 94 S.Ct. 2887.

1980); *Berg v. State,* 599 S.W.2d 802 (Tex. Crim.App. [Panel Op.] 1980); and *Asaff v. State,* 799 S.W.2d 329 (Tex.App.—Dallas 1990, pet. ref'd), the evidence was admissible.

In finding that the trial court properly excluded Wilder's evidence, the Court of Appeals noted that Reynerson had testified that similar materials were available on the internet; the proffered images were still pictures and not moving ones like the videotape; most of the proffered images originated in foreign countries; and Wilder did not know what steps (if any) the library had taken to censor internet access. From these facts, the Court of Appeals concluded that the trial court did not abuse its discretion.

■ An appellate court reviews a trial court's decision to exclude evidence under an abuse of discretion standard. *Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim. App.1996). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Id.*

■ A defendant in an obscenity case, like any other defendant, has the right to adduce relevant, competent evidence bearing on the issues to be tried, including contemporary community standards. *See Hamling,* 418 U.S. at 125, 94 S.Ct. 2887; *Berg,* 599 S.W.2d at 804–05. Comparable materials to the allegedly obscene material may be relevant to the issue of contemporary community standards. *See Berg,* 599 S.W.2d at 804–05. But the trial court has the inherent discretion to limit the quantum and quality of this evidence. *Berg,* 599 S.W.2d at 807 (citing *Hamling,* 418 U.S. at 126, 94 S.Ct. 2887).

We first note that the appellant's reliance on *Carlock, Berg,* and *Asaff* is misplaced. *Carlock* involved the admission of polls and public surveys. *Carlock,* 609

S.W.2d at 788. It did not involve the exclusion of comparable materials and is, therefore, inapposite. *Berg* and *Asaff* are also distinguishable.

In *Berg,* this Court held that the trial court erred in excluding nine magazines and one film after admitting twenty-nine other magazines, one other film, and a book. We noted that the defendant had declined to call any expert witnesses and instead relied on the introduction of comparable materials. We observed that by admitting the other comparable materials, the trial court made a finding that those materials were sufficiently probative to enlighten the jury. *See Berg,* 599 S.W.2d at 808. We held that the trial court abused its discretion by excluding the other comparable material because the excluded material was more akin to the allegedly obscene materials in the case. *See id.* The key to our decision was that the trial court's actions created a false impression with the jury. *Id.* The trial court was within its discretion in admitting comparable materials, but it abused its discretion because a false impression was created without the similar excluded evidence. *See id.* We did not hold in *Berg* that all sexually explicit material acquired in Texas is *per se* admissible in an obscenity prosecution. The proper predicate must still be met. *See United States v. Pinkus,* 579 F.2d 1174, 1175 (9th Cir.1978); *Berg,* 599 S.W.2d at 807–08; *Commonwealth v. Dane Entertainment Services, Inc.,* 389 Mass. 902, 452 N.E.2d 1126, 1133 (1983); *Gill v. State,* 675 S.W.2d 549, 551 (Tex. App.—Houston [14th Dist.] 1984, no pet.). In this case, the trial court's rulings did not create a false impression with the jury.

In *Asaff,* the Court of Appeals concluded that the trial court erred by excluding comparable magazines that an expert witness purchased and used to help form his conclusions. The Court of Appeals cited

*Berg* for the proposition that evidence of other sexually explicit materials is probative of contemporary community standards concerning obscene materials. *Asaff,* 799 S.W.2d at 334. This is correct if the proper predicate is met. To the extent that *Asaff* suggests other sexually explicit material is *per se* admissible to demonstrate contemporary community standards, it is disapproved.

■■■ Although we have never expressly dealt with the standard for admitting comparable materials in an obscenity case, several other courts (dealing with analogous obscenity statutes) have. Under these cases, when a defendant seeks to admit comparable materials in an effort to demonstrate contemporary community standards, the defendant must show: 1) there is a reasonable resemblance between the proffered comparable materials and the allegedly obscene materials; and 2) there is a reasonable degree of community acceptance of the proffered comparable materials. *Pinkus,* 579 F.2d at 1175; *United States v. Womack,* 509 F.2d 368, 377 (D.C.Cir.1972); *Dane Entertainment Services,* 452 N.E.2d at 1133 ("this two-part foundation is merely the logical prerequisite to the relevancy of the proffered comparison evidence"); *Gill,* 675 S.W.2d at 551; FREDERICK SCHAUER, THE LAW OF OB-SCENITY § 6.7 (1976). Without such a showing, "the evidence must be excluded as lacking sufficient probative value." *Womack,* 509 F.2d at 378. Also, evidence of mere availability of the comparable materials is insufficient because mere availability, without more, simply means that other persons are engaged in similar activities. *See Hamling,* 418 U.S. at 126, 94 S.Ct. 2887 (quoting *United States v. Manarite,* 448 F.2d 583, 593 (2d Cir.1971)); SCHAUER, *supra,* § 6.7. Under these cases, even if the standard is met, the trial court is allowed considerable latitude in whether to admit comparable materials since the admission of such materials may be unnecessarily cumulative, confusing to the jury, or make "the trial unmanageably complex and lengthy." *Womack,* 509 F.2d at 378. *See also* TEX.R. EVID. 403; *Hamling,* 418 U.S. at 127, 94 S.Ct 2887 (noting that the trial court retains considerable latitude in refusing to admit relevant evidence because it may be cumulative or confusing); *Berg,* 599 S.W.2d at 807 (noting that the trial court may limit the quantum and quality of evidence a defendant may seek to admit). We agree with these principles and adopt the two-part standard for the admission of comparable materials in an obscenity case.

■■ Based on this standard, we cannot say that the trial court abused its discretion in excluding the testimony of Wilder and the internet exhibits. First, the appellant failed to show a reasonable degree of community acceptance. In his bill of exceptions, the appellant focused primarily on availability at the library of the internet materials. By itself, the availability of similar materials through library computers does not show acceptance. The appellant made no showing that the community accepted the images available through the library's computers, only that such images were available. Because the appellant failed to establish a reasonable degree of community acceptance of this internet evidence, the appellant did not meet his burden.

In addition, the appellant failed to show a reasonable resemblance between many of the proffered images and the videotape. For example, a number of the internet images that were shown to the court are just the banners of internet sites. Most of these banners have no pictures and instead have only the name of the particular internet site; no sexual activity is depicted. Furthermore, other images that were

more sexual in nature than the banners did not depict similar sexual activities as those on the videotape. For example, there are some images that pictured only a single, nude female. Such images do not bear a reasonable resemblance to the activities on the videotape.

Because many of the proffered internet images did not reasonably resemble the videotape, and because the appellant did not show a reasonable degree of community acceptance of the internet images, the appellant did not meet the two-part standard. Accordingly, we hold that Court of Appeals correctly found no error by the trial court in excluding the proffered internet images from the library.

Having found that the evidence was legally sufficient to support the conviction, and having further found no error in excluding the proffered internet evidence, we affirm the Court of Appeals's judgment.

MEYERS, J., concurred.