MILLER V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-228-CR

ROBERT HARRY MILLER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Robert Harry Miller was indicted for aggravated sexual assault. A jury acquitted him of that offense, but convicted him of the lesser-included offense of sexual assault.  The jury answered negatively the question of whether Appellant used a deadly weapon in committing the offense.  Upon finding one enhancement allegation to be true, the jury assessed Appellant’s punishment at fifty years’ confinement.  In his sole point on appeal, Appellant contends the evidence is legally insufficient to support the conviction.
(footnote: 2)  We affirm.

STANDARD OF REVIEW

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

In determining the legal sufficiency of the evidence to show Appellant's intent, and faced with a record that supports conflicting inferences, we “must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.”  
Matson v. State, 
819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  

BACKGROUND

The complainant, D.W., testified that she was seventeen years old when she and Appellant knew each other from having worked together at Pizza Hut for about a month.  D.W. then went to work for Whataburger on the 10 p.m. to 6 a.m. shift, but she and Appellant remained friends.  Although they had previously been out together on one date, they had never had a sexual relationship.  D.W. testified that on March 26, 1988 she had just returned home from work at about 6-6:30 a.m. and Appellant came over to her house, which he had done on other occasions.  After talking for awhile, Appellant began to talk about having a relationship with D.W., but she responded that she wanted to remain just friends.  Appellant then insisted that D.W. was going to give him what he wanted, and after pulling D.W. by the hair, he secured the front door with the chain and locked the doorknob.  He pulled D.W. into the kitchen and grabbed a two-pronged fork.  He told D.W. that if she didn’t cooperate, it would cause her pain and she would suffer.  Appellant pressed the two-pronged fork to D.W.’s throat and told he was going to get what he wanted.  They struggled and the fork dropped onto the floor.  Appellant went back to the kitchen where he found a steak knife that he kept pressed up against D.W.’s throat.  D.W. stated she was in fear of death or serious bodily injury and that Appellant might hurt or kill her.  Appellant hit D.W. a couple of times across the face with the back of his open hand and with his fist.  They struggled and ended up in the bedroom where D.W. was knocked to the floor.  Appellant tried to cut D.W.’s shirt off, and then pulled it off.  He managed to get his clothes off and got on top of D.W., covering D.W.’s mouth so she couldn’t make too much noise by screaming.  Appellant then penetrated D.W.’s female sexual organ with his penis, without her consent.

After the sexual assault, Appellant picked up D.W. and placed her in the bathtub and told her he was sorry for what he had done and that he didn’t mean it.  D.W. told Appellant she had to go to a meeting at work and she left. Instead, she went to some friends’ apartment a few blocks away; they called the police.

Officer Fergus testified that when he arrived at the friends’ apartment, D.W. opened the door and was visibly upset.  She had been crying and her face “had been bruised up.”  D.W. had scratches and gouge marks on her neck and looked like she had been in a fight.

While Officer Fergus was at the friends’ apartment, Appellant arrived and D.W. yelled to Officer Fergus to “keep him away from me.”  The officer asked Appellant whether he “was responsible for this,” to which Appellant responded, “yes.”  Detective Van Duzee took D.W. to the emergency room of Baylor Medical Center in Grapevine where Officer Wolf took photographs of her. According to Officer Wolf, D.W. had abrasions and scratches around her neck and throat area, and a bruise and an abrasion on the left portion of her back.

The following items were recovered from D.W.’s apartment by the police and were introduced into evidence:  a bent two-pronged fork, found in the kitchen; a five-inch steak knife with a slightly bent blade, found in D.W.’s bedroom; and a slightly ripped t-shirt found in D.W.’s bedroom.

Appellant testified that on the date of the alleged assault he was twenty-two years old.  He and D.W. had previously been on five or six dates and had engaged in sexual relations once before.
(footnote: 3)  On March 26, 1988, he got off work at Pizza Hut at about 1 a.m., went home to change clothes, and about 4 a.m. he went over to D.W.’s apartment.  They made dinner or early breakfast, ate the meal, and had consensual sexual intercourse.  Appellant stated he never threatened D.W., either verbally or with a fork or knife.

DISCUSSION

In order to convict Appellant of sexual assault, the State had the burden of proving that Appellant intentionally or knowingly caused the penetration of D.W.’s female sexual organ by inserting his penis, without D.W.’s consent, by compelling D.W. to submit or participate by the use of physical force or violence or by threatening to use force or violence against D.W., and that D.W. believed that Appellant had the present ability to execute said threat.  
See
 
Tex. Penal Code Ann. 
§ 22.011 (Vernon 2003).

The following constitutes the entire relevant portion of Appellant’s argument in his brief in support of his contention that the evidence is legally insufficient to sustain Appellant’s conviction for sexual assault:

As occurs in most cases, the two parties intimately involved in this offense gave completely differing accounts of what happened on March 26, 1988.

[D.W.’s] testimony established a sexual assault.

[Appellant’s] testimony established consensual sex.

What factors militate in favor of the appellant’s version of events?

The jury did not believe [D.W.’s] rendition of the offense on a critical point.  The jury obviously rejected [D.W.’s] statements regarding the use of a weapon.  The rejection of the deadly weapon allegation calls into question the totality of [D.W.’s] credibility.  In other words, the jury, at least in part, rejected coercive behavior as a factor in the offense.

Therefore, based on 
Blankenship
, no juror acting rationally, could have found beyond a reasonable doubt that the appellant committed the offense of sexual assault.[
(footnote: 4)]

  

In order to prove the offense of sexual assault, the State was not required to prove that Appellant used or exhibited a deadly weapon.  Rather, the State

had to prove beyond a reasonable doubt that Appellant compelled D.W. to submit or participate 
by the use of physical force or violence or by threatening to use force or violence
 against D.W., and that D.W. believed that Appellant had the present ability to execute this threat.  Therefore, the fact that the jury determined Appellant did not use a deadly weapon is not a factor we consider when reviewing the legal sufficiency of the evidence to support Appellant’s conviction for sexual assault.   

Further, although Appellant contends that the jury’s rejection of the deadly weapon allegation calls into question the totality of D.W.’s credibility, the jury, not this court, was the judge of D.W.’s credibility, and the jury obviously believed her testimony that Appellant compelled her to submit to the sexual assault by the use of physical force or violence or by threatening to use force or violence against her, and that D.W. believed that Appellant had the present ability to execute this threat.

    
CONCLUSION
 

Applying the appropriate standard of review, we find the evidence is legally sufficient to support Appellant’s conviction for sexual assault, and we overrule his sole point on appeal.  The judgment of the trial court is affirmed.

PER CURIAM

PANEL F: HOLMAN, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH  

Tex. R. App. P. 
47.2(b)

DELIVERED: June 26, 2003 

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
The trial court’s judgment was signed on August 15, 1990.  On April 3, 2002, the Texas Court of Criminal Appeals granted Appellant’s request for an out-of-time appeal.  Appellant’s attorney timely filed a notice of appeal on May 7, 2002.  

3:
The State’s rebuttal witness, Detective Van Duzee, testified that during a conversation with Appellant after his arrest, Appellant stated he had not ever had sex with D.W. before.

4:
Blankenship v. State
, 780 S.W.2d 198, 207 (Tex. Crim. App. 1989) (op. on reh’g) (“We are not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the element in contention beyond a reasonable doubt; fact, acting rationally, could have found the evidence sufficient to establish the element beyond a reasonable doubt.  We do not presume that a jury acted reasonably just because they were properly instructed; we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt.”).