Kyna Dee Dennis-Marlin v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-03-066-CR

     KYNA DEE DENNIS-MARLIN,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court # 26630CR
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      A Department of Public Safety trooper cited Kyna Dee Dennis-Marlin because her license
plate was covered in duct tape and she lacked proof of insurance. When appearing in court to
respond to these two citations, she produced a fraudulent insurance card. For this, Dennis-Marlin
was later convicted of the felony offense of fabricating physical evidence and placed on ten years’
community supervision. She appeals this conviction on the sole issue of legal sufficiency of the
evidence.
      In reviewing a challenge to the legal sufficiency of the evidence, we do not weigh favorable
and non-favorable evidence. Margraves v. State, 34 S.W.3d 912, 917 (Tex. Crim. App. 2000). 
Rather, we view all the evidence in the light most favorable to the verdict and determine whether
a rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001). We consider both direct
and circumstantial evidence as well as evidence improperly admitted. Johnson v. State, 871 S.
W.2d 183, 186 (Tex. Crim. App. 1993).
      Dennis-Marlin was convicted of fabricating physical evidence, for presenting the justice-of-the-peace court a false proof-of-insurance card. See Tex. Pen. Code Ann. § 37.09 (Vernon
2003). The jury charge explained the elements of the offense: “A person commits the offense of
fabricating physical evidence, if, knowing that an official proceeding is in progress, he makes,
presents, or uses any record, document, or thing with knowledge of its falsity and with intent to
affect the course or outcome of the official proceeding.” The charge defined “official proceeding”
as: “any type of administrative, executive, legislative or judicial proceeding that may be conducted
before a public servant authorized by law to take statements under oath.” Finally, the charge
instructed the jury as to intent and knowledge:
A person acts intentionally, or with intent, with respect to the nature of his conduct or to a
result of his conduct when it is his conscious objective or desire to engage in the conduct or
cause the result. A person acts knowingly or with knowledge, with respect to the nature of
his conduct when he is aware of the nature of his conduct. A person acts knowingly, or with
knowledge, with respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.

The jury convicted Dennis-Marlin and assessed punishment at ten years’ imprisonment,
recommending community supervision. 
      Officer James Langham, who stopped Dennis-Marlin and wrote her the original citations for
an obstructed license plate and no proof of insurance, testified that he was present in court the day
Dennis-Marlin presented what turned out to be a fictitious proof-of-insurance card. He said that
he saw the card Dennis-Marlin presented to Judge Schmidt, the justice of the peace. He said that
at the time she presented the card to the court, the judge was on the bench, and a bailiff and two
other troopers also were present. He did not recall if the prosecutor was present then or not.
      Judge Schmidt also testified, saying that Dennis-Marlin had appeared for a trial setting on July
16, 2002, but the trial was postponed to accommodate Dennis-Marlin’s request for a jury trial on
the obstructed-license-plate charge. Schmidt said that she called the case and both the prosecution
and Ms. Dennis-Marlin, who represented herself, announced “ready” regarding the lack-of-insurance charge. Then Dennis-Marlin presented the phony card. According to Schmidt, in cases
such as these, defendants would routinely present proof of insurance at trial so that the charge
would be dismissed. Schmidt said that it was her practice to give these cards to her clerk, Monica
Lemon, to verify the coverage, as she did in Dennis-Marlin’s case. Schmidt told Dennis-Marlin
that upon verification of her insurance coverage, the charge against her would be dismissed. In
fact, Schmidt testified that when Dennis-Marlin gave her the insurance card, Dennis-Marlin said
she was giving it to her so that her case could be dismissed.


 
      Schmidt said that she did not remember Dennis-Marlin offering an alternative explanation as
to why her card was expired when she was stopped. She did not recall Dennis-Marlin saying that
the card provided was an example of an insurance card. Schmidt said, “That was her proof of
insurance card.” Schmidt also denied having a conversation with Dennis-Marlin regarding the fact
that Dennis-Marlin was an insurance agent.
      Monica Lemon, Judge Schmidt’s clerk, also testified. She said the JP court had a nonjury
docket on July 16, 2002. She said that Dennis-Marlin checked in with her that day, which is the
procedure for people who are on the docket. Dennis-Marlin gave her the false insurance card, and
Lemon photocopied it and returned it to Dennis-Marlin.


 Lemon called the phone number listed
on the card to verify the coverage, as was her usual practice.


 She said that the person who
answered the phone simply said “hello” instead of identifying the name of the insurance agency
(listed as Texas Union Insurance, although the card also noted an affiliation with AIG), which,
according to Lemon, is usually done. Also, Lemon recognized the voice as being Dennis-Marlin’s: Lemon testified that Dennis-Marlin had a raspy, identifiable voice. Taken aback,
Lemon hung up the phone and notified Schmidt about her encounter. She then faxed a copy of
the insurance card to the district attorney’s office. She also attempted to locate the insurance
agency listed on the card, Texas Union Insurance in Ennis, Texas. She testified that she found
no such listing in the phone book.
      Lemon said on July 16, 2002, Dennis-Marlin was not rude; Lemon did not become upset with
her. In fact, Lemon said there was not anything noteworthy about Dennis-Marlin’s behavior then. 
Lemon did not remember whether or not Dennis-Marlin filed motions that day. Lemon testified
that on that date she was not in the courtroom during Dennis-Marlin’s hearing; she said that she
did not hear Dennis-Marlin and Schmidt’s conversation.
      Cindy Hellstern, an assistant county and district attorney for Ellis County who was present
on the day in question, testified. She is the appellate attorney, but occasionally fills in for other
assistant district attorneys, including some rare appearances in the Ellis County justice-of-the-peace courts. She said that Dennis-Marlin was cordial to her that day and that she received a copy
of Dennis-Marlin’s motion challenging the JP court’s jurisdiction that day also. She said that
when Dennis-Marlin informed the judge she had a proof of insurance card, the judge asked
Dennis-Marlin to approach the bench. Hellstern approached the bench a few moments later, but
did not recall what Dennis-Marlin said to the judge regarding the card, before or after Hellstern
approached the bench.
      After July 16, Hellstern received a call from Judge Schmidt’s clerk, who said she was unable
to verify the insurance card and she did not believe it was valid. Hellstern passed it on to an
investigator.
      Next the prosecution called Mark Menefee, a senior investigator for AIG Insurance, AIG
International. He said that he had worked for AIG for about three and a half years, investigating
fraudulent coverage and claims issues, after previously working for seven years in the Texas
Department of Insurance’s fraud unit. The Ellis County District Attorney’s office contacted him
to verify Dennis-Marlin’s coverage, and faxed him a copy of Dennis-Marlin’s insurance card. He
testified that although some companies affiliated with AIG are licensed to sell personal automobile
insurance in Texas, AIG does not allow its name to be used by unaffiliated companies and “AIG
Insurance Group” is not the name of an affiliated company licensed to write auto insurance in
Texas. He also said that he was unable to locate a “Texas Union Insurance” agent or agency and
that he was unable to verify Dennis-Marlin’s coverage.
I contacted the portions of AIG that write personal auto insurance in Texas and verified
through my standard verification process whether this insurance coverage was valid. I
verified both by name and by policy number, and I could not verify coverage for this
policy number or these people during this policy period.

On cross-examination, he said that to become an insurance agent, a person first must be licensed
with the state as a local recording agent. He did not know whether or not Dennis-Marlin was
licensed as such by the state, and he was not asked to investigate that.
      After his testimony, the State rested, and the court denied Dennis-Marlin’s motion for an
instructed verdict.
      Dennis-Marlin presented contrary evidence during the defense’s case-in-chief. However,
based on a review of all the evidence in the light most favorable to the verdict, a rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt. See Burden,
55 S.W.3d at 612. Accordingly, we affirm the judgment.

                                                                   BILL VANCE
                                                                   Justice

Before Chief Justice Gray, 
      Justice Vance, and
      Judge Strother (Sitting by Assignment)



Affirmed
Opinion delivered and filed December 31, 2003
Do not publish
[CR25]