LACKEY V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-03-183-CR

KENNETH DONDI LACKEY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Kenneth Dondi Lackey brings this appeal from his conviction by a jury on two counts of aggravated sexual assault of a child under fourteen years of age.  After Appellant pleaded true to having a prior felony conviction, the trial court sentenced him to forty years’ confinement for each count, to be served concurrently.  The parties are familiar with the facts of this case, and the controlling law is well-settled.  We will affirm.

In his sole issue on appeal, Appellant argues that the evidence is legally insufficient to sustain his conviction for aggravated sexual assault of a child under fourteen.
(footnote: 2)  We will review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
(footnote: 3)
 A.D., who was born in 1987, became friends with K.C., who lived down the street.  A.D. often spent the night at K.C.’s house between September 2000 and January 2001.  Appellant was K.C.’s stepfather.  According to A.D., Appellant would come to the room where both girls were sleeping around 9:00 or 10:00 p.m. wearing only his underwear to check on the children. 

After four or five visits to K.C.’s house, A.D. noticed Appellant acting differently, and she awoke in the early morning to discover Appellant touching her breasts and vaginal area with his hands.  Several nights later, while A.D. was sleeping over, Appellant came into K.C.’s room, removed A.D.’s clothes while she was still asleep, touched her, and then put his penis in her vagina.  Appellant also kissed A.D. on the mouth.  A.D. testified that, over several months, Appellant sexually assaulted her eight or nine times with K.C. asleep in the room.  According to A.D., she and K.C. went into Appellant’s bedroom on more than one occasion and saw nude photographs on Appellant’s night stand.  A.D. also testified that she once observed Appellant looking at pornography on his computer.  She tried to bring up the topic of her assaults with K.C., but did not tell her what happened.  A.D. testified that she first told her school counselor Connie Massey about the sexual assaults “a couple of months after the last time it happened.”  A.D. testified that Appellant anally and orally assaulted her but that she never told Massey or the doctor who examined her about the one time that Appellant placed his penis in her anus.  During the last assault, A.D. pushed Appellant away and told him to stop.  In response, Appellant told A.D. that she had hurt his feelings and that he “wasn’t going to defend [her] anymore.” 

A.D. went to Cook’s Children’s Hospital for a sexual assault examination on February 28, 2001.  Dr. Jayme Coffman testified that she examined and spoke with A.D. on that day.  Dr. Coffman testified that A.D. told her that, on six or seven occasions, Appellant had “[taken] off her pants and underwear and touched her chest and vaginal area and . . . then put his penis in her vagina.” According to Dr. Coffman, A.D. also told her that Appellant licked her vagina and kissed her on her mouth and breasts.  During A.D.’s physical examination, Dr. Coffman noted a small amount of white discharge in the genital area, but she did not see any genital trauma.  However, Dr. Coffman testified that in most cases, she would not expect to see any physical injury. 

During trial, Massey testified that she had found A.D. to be believable and stated that she had called Child Protective Services as a result of the outcry.  Similarly, Catherine Smit, the DARE officer at A.D.’s middle school also testified that A.D. had a reputation for being “a truthful, honest child.” 

Appellant argues that the record reflects a hotly-contested trial, and he asserts that multiple witnesses, particularly Debra Lackey and K.C., “diminished the credibility of [A.D.’s] accusations because it does not appear credible that [A.D.] could have been repeatedly sexually assaulted in the presence of other persons without those persons being aware of the attacks.”  

Debra Lackey, Appellant’s wife, testified on behalf of Appellant.  She testified that Appellant did not keep pornography in the house or look at it on the computer.  She also denied that Appellant walked around the house in his underwear.  Debra admitted to being dependent on unemployment benefits, food stamps, and one of her children’s social security benefits for support.  She also admitted Appellant’s mother provided her with financial support and the property on which she and Appellant were living.  Debra also verified that K.C.’s father and step-grandfather were both in prison on particular types of molestation charges and that K.C. was aware of the illegal acts associated with the charges as she was a victim of both men. 

K.C. testified that there were no dirty magazines in the house and that she never saw any nude photographs.  She also testified that Appellant always wore shorts around the house, but she acknowledged that she had seen him walking around in his underwear “[w]hen he gets up early in the morning or late at night to go to the restroom.”  While K.C. testified that Appellant had come into her bedroom to check on the girls when A.D. was over, K.C. denied that A.D. told her that Appellant had done anything to her. 

K.C. also denied making a statement to the district attorney’s office that she had seen Appellant at the foot of A.D.’s bed.  During the State’s rebuttal case, however, an assistant criminal district attorney who handled a sexual assault case against K.C.’s father, testified that K.C. had previously admitted to him that she saw Appellant in her bedroom near the foot of the bed in which A.D. was sleeping. 

As the sole trier of fact during the guilt-innocence phase of trial, the jury had the responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.
(footnote: 4)  After hearing and considering all of the evidence—including that from A.D., K.C., Debra, and others—the jury determined that Appellant was guilty on two counts of aggravated sexual assault of a child under fourteen.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the testimony and, thus, substituting our judgment for that of the fact finder.
(footnote: 5)
 Accordingly, based on our review of the evidence under the applicable standard of review,
(footnote: 6) giving due deference to the factfinder’s determinations, we conclude that the evidence presented at trial is legally sufficient to support Appellant’s conviction for aggravated sexual assault.

We therefore overrule Appellant’s sole point and affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 12, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
See Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (providing legal sufficiency standard); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  Appellant does not raise a factual sufficiency complaint, having only cited as authority 
Blakenship v. State
, 780 S.W.2d 198, 207 (Tex. Crim. App. 1989) (citing 
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789), which addresses a legal sufficiency complaint.

3:
See
 
Tex. Penal Code Ann
. § 22.021 (Vernon Supp. 2004-05) (listing elements of aggravated sexual assault); 
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Burden
, 55 S.W.3d at 612.

4:
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.

5:
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

6:
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Burden
, 55 S.W.3d at 612.