COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-183-CR
  
  
KENNETH DONDI LACKEY                                                      APPELLANT
  
V.
  
THE STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM THE 371ST DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Kenneth Dondi Lackey brings this appeal from his conviction by a jury on two 
counts of aggravated sexual assault of a child under fourteen years of age. 
After Appellant pleaded true to having a prior felony conviction, the trial 
court sentenced him to forty years’ confinement for each count, to be served 
concurrently. The parties are familiar with the facts of this case, and the 
controlling law is well-settled. We will affirm.
        In 
his sole issue on appeal, Appellant argues that the evidence is legally 
insufficient to sustain his conviction for aggravated sexual assault of a child 
under fourteen.[2] We will review all of the evidence 
in the light most favorable to the verdict to determine whether any rational 
trier of fact could have found the essential elements of the crime beyond a 
reasonable doubt.[3]
        A.D., 
who was born in 1987, became friends with K.C., who lived down the street. A.D. 
often spent the night at K.C.’s house between September 2000 and January 2001. 
Appellant was K.C.’s stepfather. According to A.D., Appellant would come to 
the room where both girls were sleeping around 9:00 or 10:00 p.m. wearing only 
his underwear to check on the children.
        After 
four or five visits to K.C.’s house, A.D. noticed Appellant acting 
differently, and she awoke in the early morning to discover Appellant touching 
her breasts and vaginal area with his hands. Several nights later, while A.D. 
was sleeping over, Appellant came into K.C.’s room, removed A.D.’s clothes 
while she was still asleep, touched her, and then put his penis in her vagina. 
Appellant also kissed A.D. on the mouth. A.D. testified that, over several 
months, Appellant sexually assaulted her eight or nine times with K.C. asleep in 
the room. According to A.D., she and K.C. went into Appellant’s bedroom on 
more than one occasion and saw nude photographs on Appellant’s night stand. 
A.D. also testified that she once observed Appellant looking at pornography on 
his computer. She tried to bring up the topic of her assaults with K.C., but did 
not tell her what happened. A.D. testified that she first told her school 
counselor Connie Massey about the sexual assaults “a couple of months after 
the last time it happened.” A.D. testified that Appellant anally and orally 
assaulted her but that she never told Massey or the doctor who examined her 
about the one time that Appellant placed his penis in her anus. During the last 
assault, A.D. pushed Appellant away and told him to stop. In response, Appellant 
told A.D. that she had hurt his feelings and that he “wasn’t going to defend 
[her] anymore.”
        A.D. 
went to Cook’s Children’s Hospital for a sexual assault examination on 
February 28, 2001. Dr. Jayme Coffman testified that she examined and spoke with 
A.D. on that day. Dr. Coffman testified that A.D. told her that, on six or seven 
occasions, Appellant had “[taken] off her pants and underwear and touched her 
chest and vaginal area and . . . then put his penis in her vagina.” According 
to Dr. Coffman, A.D. also told her that Appellant licked her vagina and kissed 
her on her mouth and breasts. During A.D.’s physical examination, Dr. Coffman 
noted a small amount of white discharge in the genital area, but she did not see 
any genital trauma. However, Dr. Coffman testified that in most cases, she would 
not expect to see any physical injury.
        During 
trial, Massey testified that she had found A.D. to be believable and stated that 
she had called Child Protective Services as a result of the outcry. Similarly, 
Catherine Smit, the DARE officer at A.D.’s middle school also testified that 
A.D. had a reputation for being “a truthful, honest child.”
        Appellant 
argues that the record reflects a hotly-contested trial, and he asserts that 
multiple witnesses, particularly Debra Lackey and K.C., “diminished the 
credibility of [A.D.’s] accusations because it does not appear credible that 
[A.D.] could have been repeatedly sexually assaulted in the presence of other 
persons without those persons being aware of the attacks.”
        Debra 
Lackey, Appellant’s wife, testified on behalf of Appellant. She testified that 
Appellant did not keep pornography in the house or look at it on the computer. 
She also denied that Appellant walked around the house in his underwear. Debra 
admitted to being dependent on unemployment benefits, food stamps, and one of 
her children’s social security benefits for support. She also admitted 
Appellant’s mother provided her with financial support and the property on 
which she and Appellant were living. Debra also verified that K.C.’s father 
and step-grandfather were both in prison on particular types of molestation 
charges and that K.C. was aware of the illegal acts associated with the charges 
as she was a victim of both men.
        K.C. 
testified that there were no dirty magazines in the house and that she never saw 
any nude photographs. She also testified that Appellant always wore shorts 
around the house, but she acknowledged that she had seen him walking around in 
his underwear “[w]hen he gets up early in the morning or late at night to go 
to the restroom.” While K.C. testified that Appellant had come into her 
bedroom to check on the girls when A.D. was over, K.C. denied that A.D. told her 
that Appellant had done anything to her.
        K.C. 
also denied making a statement to the district attorney’s office that she had 
seen Appellant at the foot of A.D.’s bed. During the State’s rebuttal case, 
however, an assistant criminal district attorney who handled a sexual assault 
case against K.C.’s father, testified that K.C. had previously admitted to him 
that she saw Appellant in her bedroom near the foot of the bed in which A.D. was 
sleeping.
        As 
the sole trier of fact during the guilt-innocence phase of trial, the jury had 
the responsibility to resolve conflicts in the testimony, to weigh the evidence, 
and to draw reasonable inferences from basic facts to ultimate facts.[4]  After hearing and considering all of the 
evidence—including that from A.D., K.C., Debra, and others—the jury 
determined that Appellant was guilty on two counts of aggravated sexual assault 
of a child under fourteen. When performing a legal sufficiency review, we may 
not sit as a thirteenth juror, re-evaluating the weight and credibility of the 
testimony and, thus, substituting our judgment for that of the fact finder.[5]
        Accordingly, 
based on our review of the evidence under the applicable standard of review,[6] giving due deference to the factfinder’s determinations, 
we conclude that the evidence presented at trial is legally sufficient to 
support Appellant’s conviction for aggravated sexual assault.
        We 
therefore overrule Appellant’s sole point and affirm the trial court’s 
judgment.
 
  
                                                          ANNE 
GARDNER
                                                          JUSTICE
   
  
PANEL B:   HOLMAN, 
GARDNER, and WALKER, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: August 12, 2004


NOTES
1.  See 
Tex. R. App. P. 47.4.
2.  See 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) 
(providing legal sufficiency standard); Burden v. State, 55 S.W.3d 608, 
612 (Tex. Crim. App. 2001). Appellant does not raise a factual sufficiency 
complaint, having only cited as authority Blakenship v. State, 780 S.W.2d 
198, 207 (Tex. Crim. App. 1989) (citing Jackson, 443 U.S. at 319, 99 S. 
Ct. at 2789), which addresses a legal sufficiency complaint.
3.  See 
Tex. Penal Code Ann. § 22.021 
(Vernon Supp. 2004-05) (listing elements of aggravated sexual assault); Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789; Burden, 55 S.W.3d at 612.
4.  See 
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.
5.  Dewberry 
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000).
6.  See 
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Burden, 55 S.W.3d at 
612.