Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JORDAN JAMAAHL IGLEHART,                   )                  No. 08-03-00403-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  142nd District Court
)
THE STATE OF TEXAS,                                   )                  of Midland County, Texas
)
                                    Appellee.                          )                  (TC# CR28342)

O P I N I O N

            Jordan Jamaahl Iglehart appeals his conviction delivery of marihuana, enhanced by two prior
state jail felony convictions. A jury found Appellant guilty and further found that he had previously
been convicted of two state jail felony offenses. The jury assessed punishment at a fine of $2,000
and imprisonment for five years. We affirm.
FACTUAL SUMMARY
            On October 11, 2002, Jonathan Rider purchased marihuana while working as an undercover
officer in Midland County. Rider was employed by the Reeves County Sheriff’s Office and assigned
to the Trans Pecos Drug Task Force. Rider, who was wearing a recording device, went to the Sante
Fe Apartments in Midland where he spoke with Tanesha Jackson. Rider had previously purchased
drugs from Jackson’s boyfriend. Jackson did not have any marihuana but she directed him to go to
Apartment 1807 at the Wildflower Apartments and ask for Dupree. She instructed Rider to tell him
that “T” sent him and “everything would be cool.” Rider arrived at Apartment 1807 a few minutes
later, but Dupree was not there. The man who answered the door identified himself as Jordan. Rider
later identified Jordan as Appellant. As instructed by Jackson, Rider told Appellant that “T” had sent
him and Appellant invited him into the apartment. Rider purchased four bags of marihuana from
Appellant for $100. After Rider left the apartment, he ran into Dupree and had a brief conversation
with him. Dupree asked Rider if he got what he was looking for and Rider told him that he did. At
trial, the State introduced the tape recording of the transaction as State’s Exhibit 2. Rider identified
the voices on the tape as his own, Jackson’s, Appellant’s and Dupree’s. Appellant established during
cross-examination that Rider had purchased drugs from many defendants during this same time
period. He suggested through his questioning that Rider could identify Appellant only because he
had seen a photograph of him and had seen him in the courtroom after trial began. Rider maintained
that he recognized Appellant as the same person who sold him the marihuana. 
            Tanesha Jackson, who had been given testimonial immunity, testified during the State’s case-in-chief. Jackson intended to plead guilty to delivery of marihuana after Appellant’s trial but she had
not been given anything in exchange for her testimony. On October 11, 2002, Rider came to her
apartment and asked whether she had any marihuana. Jackson did not have any but she told Rider
that he could get marihuana from Dupree Manson at the Wildflower Apartments, Apartment 1807. 
Jackson knew Appellant because she had gone to school with him and a former boyfriend was
Appellant’s friend. She also knew that Appellant and Dupree were best friends and considered
themselves as brothers. Jackson had previously listened to State’s Exhibit 2 and could identify the
voices on the tape recording. According to Jackson, there were three different conversations. The
first conversation she heard was the one which took place between herself and Rider. The second
conversation was between Rider and Appellant. The third conversation was between Rider and
Dupree Manson. Jackson had no doubt that the person who identified himself as Jordan on the tape
was Appellant. 
            Appellant testified at trial that he had never seen Rider before and he denied selling drugs
to him. Appellant also denied that it was his voice on State’s Exhibit 2. He admitted that he knew
both Jackson and Dupree and that it was their voices on State’s Exhibit 2, but Appellant insisted that
he is not the person on the tape who identified himself as Jordan and sold the marihuana to Rider. 
The State impeached Appellant with evidence that he had been convicted of unauthorized use of a
motor vehicle, felony theft, misdemeanor theft, and failure to identify. The jury rejected Appellant’s
defense and found him guilty as alleged in the indictment. 
IMPEACHMENT EVIDENCE
            In his sole point of error, Appellant argues that the trial court abused its discretion by refusing
to allow him to impeach Rider with evidence that he had been fired for lying to his superiors about
his involvement in a high speed chase, and had incorrectly identified two defendants which led to
the dismissal of the cases against them.
            During cross-examination, Appellant asked Rider the circumstances of his leaving
employment in Kerr County and whether it was true that he had lied to his superiors. The trial court
sustained the State’s relevance objection. Appellant argued only that he was entitled “to show the
credibility of this witness” but the court stood by its prior ruling. Later during cross-examination,
Appellant asked Rider whether he had arrested a person named Scott Worley. In a bench conference,
Appellant explained that two cases, including Worley’s, had been dismissed because Rider had
misidentified the defendants. Appellant showed copies of the dismissals to the trial court. The court
sustained the State’s relevance objection. Later during the trial, Appellant’s counsel made the
substance of the evidence known to the trial court through an offer of proof. According to counsel,
Rider had falsely claimed to have been involved in a high speed chase and was terminated by the
Kerr County Sheriff’s Department. Counsel also provided copies of two dismissals of Midland
County felony cases. One case involved delivery of amphetamine and the other involved delivery
of cocaine. Counsel claimed that the cases were dismissed because Rider had identified the wrong
defendant in each case. The prosecutor noted that the evidence was properly excluded under Rule
608 of the Texas Rules of Evidence. 
            The Sixth Amendment to the United States Constitution guarantees the right of an accused
in a criminal prosecution to be confronted with the witnesses against him. U.S. Const. Amend. VI. 
Confrontation means more than being allowed to confront the witness physically. Lopez v. State,
18 S.W.3d 220, 222 (Tex.Crim.App. 2000). A primary interest secured by the Confrontation Clause
is the right of cross-examination. Lopez, 18 S.W.3d at 222. 
            The State contends that the trial court properly excluded the evidence under Rule 608(b) of
the Texas Rules of Evidence. That rule provides that:
Specific instances of the conduct of a witness, for the purpose of attacking or
supporting the witness’ credibility, other than conviction of crime as provided by
Rule 609, may not be inquired into on cross-examination of the witness nor proved
by extrinsic evidence.

Tex.R.Evid. 608(b). Although Rule 608(b) is considered more restrictive than its federal
counterpart because it does not contain the exception found in the federal rule


, there are three
recognized exceptions: (1) to expose bias, (2) to correct any affirmative misrepresentations made
on direct examination, or (3) to demonstrate a lack of capacity. See Lagrone v. State, 942 S.W.2d
602, 613 (Tex.Crim.App. 1997). Appellant does not argue that any of these exceptions apply here. 
If Rule 608(b) is applied to the instance case, the trial court properly excluded the impeachment
evidence. Nevertheless, the Court of Criminal Appeals has recognized that the Confrontation Clause
occasionally may require the admissibility of evidence that the Rules of Evidence would otherwise
exclude. Lopez, 18 S.W.3d at 225. Therefore, despite Rule 608(b)’s apparent exclusion of this
evidence, we must consider whether the Confrontation Clause requires the admission of the
impeachment evidence. Each Confrontation Clause issue must be weighed on a case-by-case basis,
carefully taking into account the defendant’s right to cross-examine and the risk factors associated
with admission of the evidence. Id. In weighing whether evidence must be admitted under the
Confrontation Clause, the trial court should balance the probative value of the evidence sought to
be introduced against the risk its admission may entail. Id. The trial court maintains broad
discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice,
confusion of the issues, endangering the witness, and the injection of cumulative or collateral
evidence. Id. We review the trial court’s decision to exclude evidence under an abuse of discretion
standard. Burden v. State, 55 S.W.3d 608, 615 (Tex.Crim.App. 2001). The trial court’s ruling
should not be reversed unless it falls outside the zone of reasonable disagreement. Id.
            Evidence that Rider had lied to a prior employer about a high speed chase and was terminated
from his employment is a collateral matter which has no probative value with respect to his alleged
misidentification of Appellant. Consequently, there was a high risk that this evidence would unduly
prejudice and confuse the jury. The trial court did not abuse its discretion by excluding this evidence
pursuant to Rule 608(b).
            Likewise, the evidence that Rider had allegedly misidentified the defendants in two unrelated
cases also possesses no probative value because it does not tend to prove that he misidentified
Appellant in this instance. See Lopez, 18 S.W.3d at 225 (noting that the mere fact that an alleged
sexual assault victim made prior false allegations does not automatically mean that the victim is
fabricating the present charge; refusing to create a per se exception for sexual offenses to allow
admission of prior false accusations of abuse by the complainant despite evidentiary rule prohibiting
inquiry into specific instances of conduct of a witness, other than conviction of crime, for purposes
of attacking the witness’s credibility on cross-examination). Given the lack of probative value, the
trial court could have reasonably concluded that these collateral instances of conduct would only
serve to prejudice the jury. Because the Confrontation Clause does not require admission of this
evidence, the court did not abuse its discretion by excluding it pursuant to Rule 608(b). We overrule
Appellant’s sole point of error and affirm the judgment of the trial court.


June 2, 2005                                                                
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)