RICHARD KEVIN MORIN V. THE STATE OF TEXAS

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-399-CR

RICHARD KEVIN MORIN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 90
TH
 DISTRICT COURT OF YOUNG COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

After a jury trial, Appellant Richard Kevin Morin was convicted of aggravated kidnapping and sentenced to ten years’ confinement in the Institutional Division of the Texas Department of Criminal Justice.  In one issue, Appellant contends that the evidence is legally and factually insufficient to support his conviction because the evidence failed to show that he took the complainant to a place “where she was not likely to be found.”
(footnote: 2)
 At around six p.m. on August 23, 2001, Beverly Morin and the complainant, Angela Christine Oustad, went to Beverly’s home to clean up the property.  When they arrived, they found Appellant, Beverly’s ex-husband, inside the house.  He held a .22 rifle with a 100-round clip, a 30-06 rifle was leaning against a kitchen chair, a Baretta pistol lay on the kitchen counter, and a .22 revolver was stuck in his pants.  Angela grabbed the telephone and tried to call 911, but Appellant knocked it out of her hand and threw it out of the trailer.  He then tied Angela’s hands behind her back, tied her feet together, and put her on the couch.  He struggled with Beverly over the rifle, hit her, later  broke her jaw, and partially tied her up.  Appellant threatened to kill both women and threatened to kill Beverly’s attorney.  The former couple argued for three or four hours about their relationship, Beverly calmed Appellant down by agreeing to reconcile, and Appellant and Beverly began drinking beer, lots of it. Angela did not drink any.  At one point, Angela tried to call for help using Beverly’s cell phone, but did not know how to unlock the keypad.

Eventually, Appellant untied the women.  He allowed Angela to use the telephone; she called a friend who did not answer the call.  A state trooper then called.  Angela answered the phone and gave it to Beverly.  The trooper told her that Appellant’s abandoned vehicle had been located.  With Appellant standing next to her, Beverly told the trooper that everything was okay.

The three then got into Beverly’s green truck; Appellant drove.  He wanted to find his truck that he had hidden in someone’s pasture, and Angela had asked to be returned to her grandmother’s home.  He still had the .22 in his pants, and when Angela asked where the guns were, Appellant said they were in the back of the truck, and Beverly confirmed it.  They laughed and cackled at Angela.  Appellant drove to where he believed he had parked his truck, but it was not there.  For about twenty to thirty minutes, Appellant drove five or six miles out in the “boonies” and “in the middle of nowhere” trying to find the truck.  Beverly testified that they drove through three or four counties.  At one point, Appellant stopped the truck and got out; the truck was still running.  Angela “freaked out” because she thought he was going to “do something” to Beverly and her.  Appellant walked about ten feet away from the truck.  Angela slid over from her seat in the middle to get behind the steering wheel and drive off, but stopped when she remembered, and Beverly reminded her, that Appellant still had the pistol in his belt.
 
 When Appellant returned to the truck, Angela told him that she had only intended to back the truck up so that the headlights could be used to find his truck.  Appellant finally gave up the search for his truck and dropped Angela off at her grandmother’s house.  Angela testified that she did not feel safe until she was released.

Appellant focuses on the facts that Angela and Beverly left Angela’s  grandmother’s house to go to Beverly’s house, that Angela’s mother and grandmother both knew it, and that because of the long association between the families, they both knew where the house was.

Appellant, however, glosses over the twenty-to-thirty minute trip out into the boonies, in the middle of nowhere, during which he was armed and Angela was not and did not feel free to leave.  Applying the appropriate standards of review for legal
(footnote: 3) and factual sufficiency,
(footnote: 4) we hold that the evidence is both legally and factually sufficient to prove that Appellant took Angela to a place “where she was not likely to be found.”  We therefore overrule Appellant’s sole issue and affirm the trial court’s judgment.

PER CURIAM

PANEL F: DAUPHINOT, J.; CAYCE, C.J.; and WALKER, J.

DO NOT PUBLISH

Tex. R. App. P.
47.2(b)

DELIVERED:  February 19, 2004

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
See 
Tex. Penal Code Ann.
 §§ 20.01(2), 20.04(a)(5) (Vernon 2003 & Supp. 2004).

3:
See Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); 
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

4:
See Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); 
Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).