COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-399-CR

  
RICHARD 
KEVIN MORIN                                                         APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
------------
 
FROM 
THE 90TH DISTRICT COURT OF YOUNG COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        After 
a jury trial, Appellant Richard Kevin Morin was convicted of aggravated 
kidnapping and sentenced to ten years’ confinement in the Institutional 
Division of the Texas Department of Criminal Justice. In one issue, Appellant 
contends that the evidence is legally and factually insufficient to support his 
conviction because the evidence failed to show that he took the complainant to a 
place “where she was not likely to be found.”[2]
        At 
around six p.m. on August 23, 2001, Beverly Morin and the complainant, Angela 
Christine Oustad, went to Beverly’s home to clean up the property. When they 
arrived, they found Appellant, Beverly’s ex-husband, inside the house. He held 
a .22 rifle with a 100-round clip, a 30-06 rifle was leaning against a kitchen 
chair, a Beretta pistol lay on the kitchen counter, and a .22 revolver was stuck 
in his pants. Angela grabbed the telephone and tried to call 911, but Appellant 
knocked it out of her hand and threw it out of the trailer. He then tied 
Angela’s hands behind her back, tied her feet together, and put her on the 
couch. He struggled with Beverly over the rifle, hit her, later broke her jaw, 
and partially tied her up. Appellant threatened to kill both women and 
threatened to kill Beverly’s attorney. The former couple argued for three or 
four hours about their relationship, Beverly calmed Appellant down by agreeing 
to reconcile, and Appellant and Beverly began drinking beer, lots of it. Angela 
did not drink any. At one point, Angela tried to call for help using Beverly’s 
cell phone, but did not know how to unlock the keypad.
        Eventually, 
Appellant untied the women. He allowed Angela to use the telephone; she called a 
friend who did not answer the call. A state trooper then called. Angela answered 
the phone and gave it to Beverly. The trooper told her that Appellant’s 
abandoned vehicle had been located. With Appellant standing next to her, Beverly 
told the trooper that everything was okay.
        The 
three then got into Beverly’s green truck; Appellant drove. He wanted to find 
his truck that he had hidden in someone’s pasture, and Angela had asked to be 
returned to her grandmother’s home. He still had the .22 in his pants, and 
when Angela asked where the guns were, Appellant said they were in the back of 
the truck, and Beverly confirmed it. They laughed and cackled at Angela. 
Appellant drove to where he believed he had parked his truck, but it was not 
there. For about twenty to thirty minutes, Appellant drove five or six miles out 
in the “boonies” and “in the middle of nowhere” trying to find the 
truck. Beverly testified that they drove through three or four counties. At one 
point, Appellant stopped the truck and got out; the truck was still running. 
Angela “freaked out” because she thought he was going to “do something” 
to Beverly and her. Appellant walked about ten feet away from the truck. Angela 
slid over from her seat in the middle to get behind the steering wheel and drive 
off, but stopped when she remembered, and Beverly reminded her, that Appellant 
still had the pistol in his belt. When Appellant returned to the truck, Angela 
told him that she had only intended to back the truck up so that the headlights 
could be used to find his truck. Appellant finally gave up the search for his 
truck and dropped Angela off at her grandmother’s house. Angela testified that 
she did not feel safe until she was released.
        Appellant 
focuses on the facts that Angela and Beverly left Angela’s grandmother’s 
house to go to Beverly’s house, that Angela’s mother and grandmother both 
knew it, and that because of the long association between the families, they 
both knew where the house was.
        Appellant, 
however, glosses over the twenty-to-thirty minute trip out into the boonies, in 
the middle of nowhere, during which he was armed and Angela was not and did not 
feel free to leave. Applying the appropriate standards of review for legal[3] and factual sufficiency,[4] we 
hold that the evidence is both legally and factually sufficient to prove that 
Appellant took Angela to a place “where she was not likely to be found.” We 
therefore overrule Appellant’s sole issue and affirm the trial court’s 
judgment.
 
 
                                                                  PER 
CURIAM
   
PANEL 
F:   DAUPHINOT, J.; CAYCE, C.J.; and WALKER, J.
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
February 19, 2004


NOTES
1. 
See Tex. R. App. P. 47.4.
2. 
See Tex. Penal Code Ann. §§ 20.01(2), 20.04(a)(5) (Vernon 
2003 & Supp. 2004).
3. 
See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden 
v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); Dewberry v. State, 
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000).
4. 
See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); Johnson 
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 
129, 134 (Tex. Crim. App. 1996).