# PD-0466-15

NO. _____

## IN THE
## COURT OF CRIMINAL APPEALS
## OF TEXAS

---

**OSBALDO VALDEZ,**
Petitioner

**v.**

**THE STATE OF TEXAS**
Respondent

---

**On Appeal from Cause No. 131798D in the 297th District of Tarrant County, Texas, Honorable Everett Young, Judge Presiding, and No. 02-14-00057-CR in the Court of Appeals for the Second District of Texas**

---

## PETITION FOR DISCRETIONARY REVIEW

---

FILED IN
COURT OF CRIMINAL APPEALS

April 24, 2015

ABEL ACOSTA, CLERK

**Stickels & Associates, P.C.**
**John W. Stickels**
**TBN: 19225300**
**P. O. Box 121431**
**770 N. Fielder Rd.**
**Arlington, Texas 76012**
**Phone: (817) 479 - 9282**
**Fax: (817) 622 – 8071**
**john@stickelslaw.com**
**Attorney for Petitioner**

**NO ORAL ARGUMENT REQUESTED**

## THE PARTIES

Pursuant to Rule 38(a) of the Texas Rules of Appellate Procedure, the following is a complete list of the names and addresses of all parties to the trial court's final judgment and counsel in the trial court, as well as appellate counsel, so the members of the court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case and so the Clerk of the Court may properly notify the parties to the trial court's final judgment or their counsel, if any, of the judgment and all orders of the Court of Appeals.

Trial Judge: The Honorable Everett Young
297th District Court
Tarrant County, Texas
401 Belknap, 5th Floor
Fort Worth, Texas 76196

Petitioner: Osbaldo Valdez
TDC No. 01910692
Polunsky Unit
3872 FM 350 South
Livingston, TX 77351

Appellant's Trial Counsel: Honorable Ken Cutrer
TBN: 00787318
912 W. Belknap
Fort Worth, Texas 76102

Appellant's Counsel
on Appeal:                          Honorable John W. Stickels
                                    TBN: 19225300
                                    P. O. Box 121431
                                    770 N. Fielder Rd.
                                    Arlington, Texas 76012


Appellee:                           The State of Texas


Appellee's Trial Counsel:           Honorable Lisa Callaghan
                                    TBN: 01160700
                                             and
                                    Honorable Kim Martinez
                                    TBN: 24045101
                                    Assistant District Attorneys
                                    401 Belknap
                                    Fort Worth, Texas 76196


Appellee's Counsel
on Appeal:                          Tarrant County Criminal District Attorney
                                    Appeals Division
                                    401 Belknap
                                    Fort Worth, Texas 76196


ii

# TABLE OF CONTENTS

THE PARTIES ........................................................................................................i

TABLE OF CONTENTS ........................................................................................iii

TABLE OF AUTHORITIES....................................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ........................................... 1

STATEMENT OF THE CASE ............................................................................. 1

STATEMENT OF PROCEDURAL HISTORY .................................................... 1

GROUNDS FOR REVIEW ................................................................................. 2

The Second Court of Appeals erred when it did not find that there was insufficient evidence to support Petitioner's conviction........................................................................... 2

REASONS FOR REVIEW.................................................................................... 2

DISCUSSION........................................................................................................ 2

ARGUMENTS ..................................................................................................... 7

A. LEGALLY INSUFFICIENCY – STANDARD OF REVIEW: .................................... 7

B. ARGUMENT AND AUTHORITIES – INSUFFICIENT EVIDENCE: ...................... 7

PRAYER FOR RELIEF .................................................................................... 11

CERTIFICATE OF SERVICE........................................................................... 12

CERTIFICATE OF COMPLIANCE ................................................................. 12

APPENDIX ........................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)................................................7

*Burden v. State*, 55 S.W.3d 608 (Tex. Crim. App. 2001). ...............................................7

*Jackson v. Virginia*, 443 U.S. 307 (1979) .......................................................................7

*Muniz v. State*, 851 S.W.2d 238 (Tex. Crim. App. 1993). ...............................................7

**Statutes**

Tex. Penal Code §2.01(2003). ...........................................................................................7

Tex. Penal Code §29.03(1994) ..........................................................................................8

Tex. Penal Code §6.03(a)(1974). .......................................................................................8

Tex. Penal Code §6.03(b)(1974). .......................................................................................9

**Rules**

Tex. R. App. P. 38(a).........................................................................................................i

Tex. R. App. P. 66.3 .........................................................................................................2

Tex. R. App. P. 9(4)(i)(1). ...............................................................................................12

Tex. R. App. P. 9.4(e).......................................................................................................12

Tex. R. App. P. 9.4(i)(2)...................................................................................................12

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner does not request oral argument in this case.

## STATEMENT OF THE CASE

Petitioner was indicted in a two-count indictment in Cause No. 1317982D in the 297th District Court of Tarrant County, Texas. The indictment alleged that Petitioner committed the felony offense of aggravated robbery in Tarrant County, Texas, on or about February 13, 2014. The indictment contained a repeat offender notification. (CR. 6). Petitioner's jury trial was held in the 297th District Court of Tarrant County, Texas, before the Honorable Everett Young. The jury found Petitioner guilty of the offense of aggravated robbery. (CR. 67; 5 R.R. at 58). The jury found the repeat offender allegation to be 'true' and sentenced Petitioner to confinement for ninety nine (99) years in the Institutional Division of the Texas Department of Criminal Justice. (C.R. 77; 6 R.R. at 61). Petitioner has remained in custody pending appeal.

## STATEMENT OF PROCEDURAL HISTORY

The opinion by the Second District Court of Appeals affirming the trial court's decision was handed down on March 19, 2015. Therefore, this PDR was due on April 20, 2015. A Motion for Leave to File PDR Late is being tendered herewith.

1

## GROUNDS FOR REVIEW

The Second Court of Appeals erred when it did not find that there was insufficient evidence to support Petitioner's conviction.

## REASONS FOR REVIEW

1. The decision of the Second Court of Appeals conflicts with decisions rendered by the Court of Criminal Appeals.

2. The decision of the Second Court of Appeals conflicts with the decisions of other courts of appeals.

3. The decision of the Second Court of Appeals so far deviates from the fair administration of justice that a Court of Criminal Appeal's correction is required. *See* Tex. R. App. P. 66.3

## DISCUSSION

On February 13, 2013, the Metro PCS store locate at 901 Sylvania, Fort Worth, Texas was robbed by an unknown person wearing a grey hoodie and grey sweat pants. The store employee described the unknown person as a Hispanic male in his 20's wearing a grey hoodie, grey sweat pants, and a black mask. (4 R.R. at 19-22). The unknown person was also carrying an automatic pistol. A picture of a similar pistol was admitted as State's Exhibit 7 (for demonstrative purposes only). (4 R.R. at 22-23; SX 7). The unknown person pointed the pistol at the clerk and

2

demanded money and a cell Galaxy S3 cell phone. (4 R.R. at 24). The clerk gave the unknown person about $300.00 from the cash register but did not have a Galaxy S3 cell phone to give him. (4 R.R. at 24-26). Instead, the clerk gave the unknown person a LG Spirit phone. The clerk could not identify the person who robbed her. (4 R.R. at 27).

R.H. owns the building where the Metro PCS store was located and was driving by the Metro PCS store when the unknown person wearing came out of the Metro PCS store wearing a grey hoodie and sweat pants. R.H. decided to follow the unknown man. (4 R.R. at 40-42). R.H. followed the unknown man to the end of the building when the unknown man took off the hoodie and the sweat pants and threw them in the trash. (4 R.R. at 42). After he took off the grey hoodie and sweat pants, he is wearing a t-shirt R.H. continued to follow the unknown man to a cul-de-sac where he waited until the unknown man turned around and came back. (4 R.R. at 42-43). The car the unknown man was driving was a black car similar to a firebird with an 'old style' Texas license plate with, possibly, a B and 873. (4 R.R. at 45-45).

R.H. saw the unknown person as he was driving the car past him and described the driver as a "good built" Hispanic male with short hair about 30 years old. The man had kind of a rounded face and no tattoos or any other distinguishing features. (4 R.R. at 46-47).

3

A detective showed R.H. a photograph lineup containing 6 Hispanic males and identified one of the pictures as being the person who came out of the Metro PCS store. (4 R.R. at 48-50; SX 67). However, R.H. identified another person as possibly being the person he saw coming out of the Metro PCS store. (4 R.R. at 51-52). R.H. made an in-court identification of Petitioner as the person who came out of the Metro PCS store. (4 R.R. at 52-53).

R.H. admitted during cross examination that he had difficulty identifying the unknown person during the photo lineup. (4 R.R. at 56-58). R.H. was confused between two pictures in the photo lineup and selected two pictures of people he thought could have been the unknown person who was coming out of the Metro PCS store. (4 R.R. at 57-58). R.H. selected the picture who looked most like the person coming out of the Metro PCS store. In fact, R.H. said that he hoped he was selecting the correct picture and doing the right thing and not getting his identification wrong. (4 R.R. at 57-59).

The LG Spirit phone was activated the day following the robbery by someone and calls were made on it. (4 R.R. at 114). Officers from the Fort Worth Police Department obtained a warrant for the phone records relating to the activated LG Spirit cell phone. The records relating to the LG Spirit phone were admitted as State's Exhibit 64. (4 R.R. at 115; SX 64). The records for State's Exhibit 64

4

showed that multiple calls were made to and from the LG Spirit were related to phone numbers connected to Petitioner's girlfriend, mother, and place where he lived. (4 R.R. at 117-122). The officers watched the house where Petitioner lived for about a week and saw a car similar to the one described by R.H. (4 R.R. 125). The officers obtained and arrest and search warrant for Petitioner and arrested him. (4 R.R. at 127-128).

Officers conducted a sequential photographic lineup with R.H. that included a picture of Petitioner. (4 R.R. at 135-137. SX 69) R.H. ultimately chose picture number 4 (Petitioner), however, he was unsure of his identification. (4 R.R. at 137, 156-159). According to the detective who administered the lineup, R.H. identified "number 1 or number 4, but number 4 looked most like the subject." ((4 R.R. at 157, ln. 22).

The detective identified Defendant's Exhibit 2 as a recording of the photo spread interview of R.H. (4 R.R. at 159; DX 2). Defendant's Exhibit 2 was played for the jury (4 R.R. at 159) and demonstrates the difficulties R.H. had in making the identification from the photographs. (DX 2).

According to the detective, R.H. did not describe the unknown as having any tattoos – even though he was wearing a white t-shirt. (4 R.R. at 160). In fact, R.H. did not remember the unknown person as having any tattoos. (4 R.R. at 160-161).

5

However, Petitioner has many tattoos that are visible when he is wearing a t-shirt. According to Petitioner's Aunt he has had many tattoos for over 2 years that are visible when he is wearing a t shirt. (5 R.R. at 10-11; DX 3, 4, 5, and 6).

It is important to note there was no physical evidence whatsoever, no fingerprint, DNA, or any other physical evidence that connects Petitioner to the robbery. Also, there were no proceeds of the robbery found in any place of item (automobile) related to Petitioner. The only evidence that remotely connects Petitioner to the robbery is the tainted identification by R.H.

Petitioner was indicted in a two-count indictment in Cause No. 1317982D in the 297th District Court of Tarrant County, Texas. The indictment alleged that Petitioner committed the felony offense of aggravated robbery in Tarrant County, Texas, on or about February 13, 2014. The indictment contained a repeat offender notification. (CR. 6). Petitioner's jury trial was held in the 297th District Court of Tarrant County, Texas, before the Honorable Everett Young. (CR. 161; 4 R.R. at 8). The jury found the repeat offender allegation to be 'true' and sentenced Petitioner to confinement for ninety nine (99) years in the Institutional Division of the Texas Department of Criminal Justice. (C.R. 58; 4 R.R. at 170). Petitioner has remained in custody pending appeal.

## ARGUMENTS

### A. LEGALLY INSUFFICIENCY – STANDARD OF REVIEW:

When reviewing a claim of insufficiency of the evidence, the appellate court must determine, after considering all the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Burden v. State*, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001). In conducting this review of insufficiency, the court does not reevaluate the weight and credibility of the evidence, but only ensures that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993). Whether the evidence satisfies the Jackson test is a matter of law. The *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

### B. ARGUMENT AND AUTHORITIES – INSUFFICIENT EVIDENCE:

The State is required to prove every element of an offense beyond a reasonable doubt. Tex. Penal Code §2.01(2003). According to the evidence adduced at trial, there is both factually and legally insufficient evidence for the jury to have found

7

beyond a reasonable doubt that Petitioner committed the indicted offense. As a result, this Court should overturn his convictions and order an acquittal.

A person commits the criminal offense of aggravated robbery if the person uses threats force to commit a theft and uses or exhibits a deadly weapon. Tex. Penal Code §29.03(1994). The State failed to prove each and every element of the offense charged. Specifically, the State failed to prove that Petitioner was the person who committed the offense in question because of a mistaken identity and/or misidentification.

The indictment in this case alleges that Petitioner, on or about February 14, 2014, intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place M. R. in fear of imminent bodily injury or death, and the defendant used or exhibited a deadly weapon, to-wit: a firearm. (C.R. 6). A person acts intentionally, or with intent, with respect to the nature of his conduct or as a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code §6.03(a)(1974). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exists. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is

8

aware that his conduct is reasonably certain to cause the result. Tex. Penal Code §6.03(b)(1974).

In the case at bar there is insufficient evidence to support the jury's finding that Petitioner committed the offense of aggravated robbery at the Metro PCS store on February 13, 2014, other than the tainted identification by R.H., because there is no non-testimonial (physical) evidence that connects Petitioner to the offense alleged in the indictment.

The primary problem with the state of the evidence against Petitioner is the inconclusive identification by R.H. As noted by both R.H. and the detective, during the photographic lineup R.H. selects two people, the person in place number one and the person in place number four, as the person who he saw leaving the Metro PCS store. R.H. stated that is could be this one, could be that one, but number four looks more like the person he saw. It is important to note that R.H. did not say this is the person who did it. Instead, R.H. sad this person looks more like the one I saw. Obviously, 'this person looks more like the one I saw' is NOT the same as 'this is the person who did it.'

In addition to the lack of identification, R.H. admits that he may have made an incorrect identification when he told the detective that he hopes he's not making a terrible mistake by picking this person.

9

Finally, the recording of R.H. making his identification of Petitioner, Defense Exhibit 2, demonstrates how hesitant he was in identifying Petitioner.

The second problem with the state of the evidence against Petitioner is that R.H. failed to note R.H.'s obvious identifying factor – his tattoos. Petitioner's Aunt testified that Petitioner has many tattoos that are visible when wears a t-shirt. As noted by R.H., the unknown person had on a t-shirt after he threw away the grey hoodie and sweat pants. Petitioner's tattoos are also amply demonstrated in Defendant's Exhibits 3, 4, 5, and 6. If Petitioner had truly send Petitioner as he testified, he would have noticed the tattoos.

Finally, the third problem with the state of the evidence against Petitioner is the lack of any physical evidence connecting him to the robbery. As stated above, there was no physical evidence whatsoever, no fingerprint, DNA, or any other physical evidence that connects Petitioner to the robbery. Also, there were no proceeds of the robbery found in any place of item (automobile) related to Petitioner.

The only evidence that remotely connects Petitioner to the robbery is the tainted identification by R.H. As amply demonstrated above, R.H.'s identification of Petitioner is tainted, suspect, and is insufficient to support his conviction.

The Second Court of Appeals erred when it did not find that there is insufficient evidence to sustain Petitioner's conviction and this court should reverse Petitioner's conviction.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully prays that this Court grant discretionary review and allow each party to fully brief and argue the issues before the Court of Criminal Appeals and that upon reviewing the judgment entered below, that this Court reverse this cause and remand it for a new trial.

Respectfully submitted,

Stickels & Associates, P.C.
P. O. Box 121431
770 N. Fielder Rd.
Arlington, Texas 76012
Phone: (817) 479 - 9282
Fax: (817) 622 – 8071
john@stickelslaw.com

BY: /S/ John W. Stickels
John W. Stickels
State Bar No. 19225300
Attorney for Osbaldo Valdez

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been furnished to counsel for the State via hand delivery and on the State Prosecuting Attorney via regular mail on this 23rd day of April, 2015.

/S/ John W. Stickels
John W. Stickels

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i)(2) because it contains 2,694 words, excluding the parts of the brief exempted by Tex. R. App. P. 9(4)(i)(1).

2. This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in proportional spaced typeface using Windows Word software in Times New Roman 14-Point text and Times New Roman 12-point font in footnotes.

/S/ John W. Stickels
John W. Stickels

## **APPENDIX**

1. Opinion of the Seventh Court of Appeals



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00057-CR

OSBALDO VALDEZ                                                                APPELLANT

V.

THE STATE OF TEXAS                                                                STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1317982D

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Osbaldo Valdez of aggravated robbery with a deadly weapon and assessed his punishment at ninety-nine years' confinement. The trial court sentenced him accordingly. Appellant brings a single point on appeal, challenging the sufficiency of the evidence to support the conviction.

----

[1]*See* Tex. R. App. P. 47.4.

Because the evidence is sufficient to support the jury's verdict, we affirm the trial court's judgment.

**Brief Facts**

The robbery occurred at a Metro PCS store in Fort Worth, Texas. The complainant, a store employee who was robbed, testified at Appellant's trial. She described the person who robbed her as a Hispanic man who looked like he was probably in his twenties, wearing a gray hoodie, gray sweat pants, and a black mask. The robber was carrying an automatic pistol, and at one point, he pointed the gun at the employee. The man asked for a Samsung Galaxy S3 phone and money. The complainant gave him the money in the register, but the store did not have a Galaxy S3, so he took an LG phone instead. Because the robber had been wearing a mask, the complainant could not identify him.

The store is located in a strip shopping center owned by R.H. At the time, R.H.'s office was across the street, and he was driving by the building when the robbery occurred. He saw a person wearing a gray hoodie and sweat pants come out of the building. R.H. decided to follow the man because he thought it was strange for someone to wear sweats on a hot day, and when the man saw R.H., "he started a fast trot." At the end of the building, the man took off the hoodie and threw it in the back of a car parked there. The man had on a T-shirt underneath the hoodie. The man's car was parked on a cul-de-sac, and R.H. waited until the man drove out of the cul-de sac. R.H. observed that the man drove a black car similar to a Firebird, with a spoiler on the back.

2

As the car drove past, R.H. saw the man, whom he described as a "good built" Hispanic man with short hair. The man looked to be about thirty. He had a rounded face and no tattoos or other distinguishing features. (Appellant has tattoos on his arm that can be seen when he wears a T-shirt.) R.H. was able to see part of the license plate, which he gave to the police.

The police showed R.H. a photo lineup. He initially picked out both Appellant's photograph and one that he believed was similar but ultimately chose the picture of Appellant. In court, he identified Appellant as the man he had seen.

The LG phone that was stolen during the robbery was activated the day after the robbery, and calls were made on it. Fort Worth police officers obtained a warrant for the phone records of the phone, which showed that the calls connected to Appellant's home, girlfriend, and mother.

Officers watched the house where Appellant lived and saw a car similar to the one that R.H. had described. The officers then obtained a search warrant and an arrest warrant for Appellant. The police did not find the stolen phone or the gun that was used in the robbery.

**Sufficiency of the Evidence**

In his sole point, Appellant argues that the evidence is insufficient to support his conviction. In his brief, he summarizes his complaint:

> There are three significant problems with the evidence . . . . The primary problem with the state of the evidence . . . is the inconclusive identification by R.H. The second problem . . . is that

3

the primary witness failed to note [Appellant's] obvious identifying factor—his tattoos. The third problem . . . is the lack of any physical evidence connecting him to the robbery. Therefore, under the facts of this case, a rational fact finder could not have found beyond a reasonable doubt that [Appellant] committed the offense of aggravated robbery as alleged in the indictment. Therefore, there is insufficient evidence to support his conviction. As a result, the submitted evidence [is] insufficient to support his conviction and this Court should reverse his conviction.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3]

The trier of fact is the sole judge of the weight and credibility of the evidence.[4] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[5] Instead, we determine whether the necessary

---

[2]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

[3]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

[4]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170.

[5]*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[6] We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[7]

The State summarizes the evidence supporting the conviction:[8]

- The robbery occurred between 1:30 p.m. and 1:40 p.m. on February 14, 2013.

- R.H. saw a suspicious man exit the Metro PCS store after 1:00 p.m. on February 14, 2013.

- R.H.'s description of the man running from the Metro PCS store matched [the complainant's] description of the robber.

- Appellant matched the general description of the robber.

- Someone activated the telephone stolen in the robbery using a false name and an address on the same street as Appellant's residence.

- The phone stolen in the robbery placed several calls to and received several calls from Appellant's mother and his girlfriend.

- Based on his analysis of the call records of the stolen phone, FBI Agent Mark Sedwick testified, "it's very likely (Appellant) was using (the stolen) phone at (his home) address."

- Appellant's car matched the car R.H. described in his testimony.

---

[6]*Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[7]*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

[8]We have omitted all record references provided by the State and replaced the witness's name with "R.H." throughout the quoted passage.

- Appellant's license plate number corresponded with the partial plate number R.H. reported.

- Appellant's license plate's appearance corresponded with the license plate R.H. described.

- In Appellant's residence, the police found a hoodie[,] sweat pants[,] and shoes similar to those worn by the robber.

- In a pre-trial photo lineup, R.H. identified Appellant as the man he saw running from the crime scene.

- During trial, R.H. positively identified Appellant as the man he saw fleeing the Metro PCS store after the robbery.

Although R.H.'s original identification of Appellant's photograph was tentative, he was not at all tentative when he identified Appellant in court. Photographs offered by Appellant and admitted into evidence during trial reveal Appellant's tattoos on his arms and on the right side of his neck. But the T-shirt he is wearing in the admitted photographs covers his chest and back, so it is impossible to determine whether he has additional tattoos. While inside the Metro PCS store, the robber was wearing a hoodie that covered his upper body. The complainant mentioned no tattoos, but they would have been covered during the robbery. R.H. stated that he did not see any tattoos on the man he saw.

Employing the appropriate standard of review, we hold that the evidence is sufficient to support the jury's verdict that the State had proved Appellant's guilt beyond a reasonable doubt. Any inconsistencies in R.H.'s identification of

6

Appellant were a matter for the jury to weigh in its determination of guilt and do not render the evidence irrational or insufficient.[9]

**Conclusion**

We therefore overrule Appellant's sole point and affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GABRIEL, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 19, 2015

---

[9]*See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (holding jury determines weight and credibility of testimony and it is within jury's province to reconcile conflicts), *cert. denied*, 532 U.S. 944 (2001); *Montejano v. State*, No. 08-12-00235-CR, 2014 WL 4638911, at *5 (Tex. App.—El Paso Sept. 17, 2014, no pet.) (not designated for publication).

7