ACCEPTED
06-15-00126-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/20/2015 11:43:27 AM
DEBBIE AUTREY
CLERK

*Oral Argument Not Requested*

**No. 06-15-00126-CR**

**IN THE COURT OF APPEALS
FOR THE SIXTH DISTRICT OF TEXAS
AT TEXARKANA, TEXAS**

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
10/20/2015 11:43:27 AM
DEBBIE AUTREY
Clerk

_____

**MARTHA ARACELY RICHTER**

**Appellant**

**vs.**

**THE STATE OF TEXAS,**

**Appellee**

_____

**APPELLANT'S  BRIEF**

On appeal from the County Court at Law No. 2
Honorable A. Gene Calvert, Jr.
of Ellis County, Texas
In Cause No. 14-11631-CR

**Julissa Martinez**
State Bar Number:  24032580
ATTORNEY FOR APPELLANT

107 Kaufman Street
Waxahachie, Texas 75165
(972) 937-4477 (*telephone)*
(469) 937-4485 (*fax)*
*jm@martinezjustice4all.com*

# LIST OF PARTIES

**APPELLANT**
Martha Aracely Richter

**APPELLEE**
The State of Texas

**DEFENSE COUNSEL AT TRIAL**
Julissa Martinez
Attorney at Law
107 Kaufman Street
Waxahachie, Texas 75165

**STATE'S ATTORNEYS AT TRIAL**
Lindy Beaty
Ryan Martin
Ellis County District Attorney's Office
109 South Jackson Street
Waxahachie, Texas 75165

**APPELLANT'S ATTORNEY ON APPEAL**
Julissa Martinez
Attorney at Law
107 Kaufman Street
Waxahachie, Texas 75165

**STATE'S ATTORNEY ON APPEAL**
Patrick Wilson (or his designated representative)
Ellis County District Attorney's Office
109 South Jackson Street
Waxahachie, Texas 75165

# TABLE OF CONTENTS

IDENTITY OF PARTIES.................................................................................1

TABLE OF CONTENTS.................................................................................2

INDEX OF AUTHORITIES......................................................................... 3-4

STATEMENT OF CASE ..............................................................................5

ISSUES PRESENTED...................................................................................6

STATEMENT OF FACTS ........................................................................ 7-14

SUMMARY OF ARGUMENTS....................................................................15

ARGUMENTS .......................................................................................... 16-31

    **First Issue**:  The trial court erred in allowing Trooper Henry to
testify as an expert witness for the State ................................................ 16-21

    **Second Issue**:  The trial court improperly admitted hearsay ................. 21-25

    **Third Issue**:  The evidence was legally insufficient to support a
conviction for DWI.................................................................................. 25-31

PRAYER FOR RELIEF ...............................................................................31

CERTIFICATE OF COMPLIANCE.............................................................32

CERTIFICATE OF SERVICE .....................................................................32

# INDEX OF AUTHORITIES

## Cases

*Burden v. State*,
    55 S.W.3d 608 (Tex. Crim. App. 2001) .......................................................23

*Coble v. State*,
    330 S.W.3d 253 (Tex. Crim. App. 2010, cert. denied) ...............................19

*Hooper v. State*,
    209 S.W.3d 128 (Tex. Crim. App. 2006) ....................................................26

*Jackson v. Virginia*,
    443 U.S. 307 (1979)............................................................................. 25-26

*Malik v. State*,
    953 S.W.2d 234 (Tex. Crim. App. 1997) ....................................................26

*Martinez v. State*,
    178 S.W.3d 806 (Tex. Crim. App. 2005) ....................................................24

*Rodgers v. State*,
    205 S.W.3d 525 (Tex. Crim. App. 2006) ....................................................16

*Vela v. State*,
    209 S.W.3d 128 (Tex. Crim. App. 2006) ................................................ 16-17

## Rules

TEX. R. APP. P. 44.2(b)...............................................................................19

TEX. R. EVID. 702. ......................................................................................23

TEX. R. EVID. 801(d). ................................................................................23

TEX. R. EVID. 802. ........................................................................23

TEX. R. EVID. 803. ................................................................ 23-24

## **Statutes**

TEX. PENAL CODE § 49.04. .....................................................................5, 26

**TO THE HONORABLE COURT OF APPEALS:**

**COMES NOW** Appellant, Martha Aracely Richter, and submits this brief on appeal from a conviction for the offense of Driving While Intoxicated in the County Court at Law No. 2 of Ellis County, the Honorable Gene Calvert, Jr., presiding.

## STATEMENT OF THE CASE

Marth Aracely Richter (hereinafter "the Appellant") was charged by Information with the offense of Driving While Intoxicated, a Class B misdemeanor. (CR: 14); TEX. PENAL CODE §49.04. Appellant waived her right to a trial by jury. (RR2: 6) (CR: 86). A trial on the merits was held before the court on Appellant's plea of not guilty. (RR2: 8). Following a trial, the court convicted Appellant of the offense as alleged in the Information. (RR3: 141) (CR: 7). Punishment was assessed at 180 days confinement in the county jail, probated for 2 years and a $300 fine. (RR3: 132-136) (CR: 7, 105). The trial court sentenced Appellant in accord with the punishment. (RR3: 141). Judgment was entered on June 30, 2015. (CR: 105). Notice of appeal was timely filed. (CR: 109).

# STATEMENT OF ISSUES

**First Issue:** The trial court erred in allowing Trooper Henry to testify as an expert witness for the State given he had limited training or experience. The trial court's evaluation of the Trooper was insufficient and his testimony should have been excluded.

**Second Issue:** The trial court improperly overruled Appellant's Hearsay objection.

**Third Issue:** The evidence was legally insufficient to prove Appellant committed the offense of driving while intoxicated.

**Gilbert Ruiz**, a Sergeant with the Palmer Police Department, responded to a 911 call in reference to a single vehicle crash along Interstate 45 (I-45) on February 14, 2014. (RR2: 13, 15-16). According to Ruiz, Appellant's car was between the guardrail and the center cable, facing in the opposite direction. (RR2: 16, 18). When Ruiz arrived at the location, he observed Appellant sitting in the driver's seat and she appeared to be disoriented, slurred speech and glassy eyes. (RR2: 18-19).

Ruiz did not smell alcohol, so based on his experience, he concluded "intoxication by drug." (RR2: 19). Ruiz testified he found medications in Appellant's purse including Codeine, Celexa and Lioresal. (RR2: 22). She complied with Ruiz to do the standard field sobriety tests ("SFST") and she chose to go with the EMS rather than go with Ruiz. (RR2: 20).

During her SFST, Appellant had trouble with the horizontal gaze nystagmus (HGN) test due to her eyes closing or falling. (RR2: 25-26). Appellant objected to any further testimony as to the HGN and the court sustained the objection pursuant to a Motion in Limine filed by Appellant. (RR2: 27-28).

Ruiz went on to testify that Appellant performed poorly on both the walk-and-turn test and the one leg stand. (RR2: 28-29). While Ruiz made an opinion Appellant was intoxicated due to the introduction of drugs, he did not arrest Appellant. (RR2: 30). According to Ruiz, because Appellant had expressed she felt depressed, he told

7

her to either "go get some medical attention or she would get arrested." (RR2: 30-31). Appellant went to the hospital. (RR2: 31). Ruiz testified he never obtained a search warrant to draw Appellant's blood because he knew he get a search warrant to obtain her medical records. (RR2: 31).

During the time Ruiz is questioning Appellant, he spoke with Appellant's boyfriend on the phone, Mr. Castillo, who stated that he had gotten into an argument with Appellant earlier that day and that she had stated she was going to take all her pills. (RR2: 33). Mr. Castillo later comes to the scene of the accident to speak to Ruiz. (RR2: 34). Once Appellant leaves with the ambulance, Ruiz completes his investigation. (RR2: 35).

**Emigdio Castillo, Sr**., lived with Appellant in February, 2014. (RR2: 82, 85). According to Castillo, he and Appellant were in an argument the night of February 13, 2014. (RR2: 86). He responded to the scene of the accident in the early hours of February 14, 2014. (RR2: 88). He stated he did not recall talking to the officer about pills and that he has never seen take too many pills. (RR2: 89). He did not recall calling Appellant on the night of February 14, 2014, but he did recall the talking to an officer about the accident. (RR2: 95). Castillo sought professional help for his memory loss and states he has trouble focusing even today. (RR2: 92-93).

**Craig Henry**, a trooper and drug recognition expert (DRE) with the Texas Department of Public Safety (DPS), testified he was certified to administer the

8

standard field sobriety tests under NHTSA. (RR2: 98-99). He also completed a two-week course about drugs was trained to administer a full 12-step evaluation on candidates. (RR2: 102, 104). As a DRE, Henry said he was able to evaluate and give a first-hand analysis of another officer's DWI stop. (RR2: 106).

Trooper Henry based his opinion on the data he collected which consisted of materials provided, case reports, medical reports, and videos, however, he did not interview the arresting officer. (RR2: 117-118). As a DRE, he would personally look at a suspect's eyes to administer the HGN, however, since he was not present at the scene of the accident and he never saw Appellant's eyes and that he relied on Officer Ruiz' determination that HGN was present. (RR2: 118-119, 139). Since there was no indication alcohol was present, Henry surmised intoxication due to the introduction of some type of depressant, anesthetic or inhalant. (RR2: 119).

Henry further evaluated Appellant's SFST performance and classified it as poor. (RR2: 121). He next did a cursory view of the medical records which included Appellant's pulse, blood pressure and body temperature. (RR2: 122). Henry indicated that a low pulse coupled with low blood pressure and low body temperature all told him "something" was depressing her central nervous system. (RR2: 125-126). Other indicators such as disorientation, droopy eyelids, sluggish reaction and slurred speech also pointed to the presence of depressants. (RR2: 127).

9

In Henry's opinion, Appellant's delayed reaction and inability to conduct the SFSTs were a result of being on a CNS depressant and a narcotic analgesic. (RR2: 130). Specifically, Henry stated that if Appellant had taken any of the pills which were found in her possession, then it would most likely have caused the responses that were seen the night she was arrested. (RR2: 133). Based on his opinion, Appellant was intoxicated due to depressants. (RR3: 134-135).

**Curt Richter**, a former law enforcement officer and x-husband to Appellant, testified he received a phone call from Appellant in the early hours of February 14, 2014. (RR3: 10-12, 20). According to Mr. Richter, Appellant sounded a little upset, but normal to him. (RR3: 13). Mr. Richter testified Appellant took medications for daily pain she struggled with as a result of arthritis, anxiety and low back pain. (RR3: 18-19). On cross, Mr. Richter, a former law enforcement officer, was asked:

> Q:     By four o'clock in the morning. And if there's been testimony that she didn't sleep the night before, then there's a good chance that she could still be under the effect of that medication that you've seen in the past, correct?
>
> Witness:     No.
>
> Q:     Why not?
>
> Witness:     Doctors – medicines prescribed, if it's right on the bottle every four to six hours. After that four to six hours, it gets to the point where it's no longer affecting the individual and it stayed in her system for days. Sometimes up to five days but it's not affecting them physically or mentally.

(RR3: 20).

Mr. Richter testified he was told by Appellant that she had in fact taken medication the night before. (RR3: 20). Having known her since 1994 and having been familiar with her back pain as a result of a motor vehicle accident, Mr. Richter believed it would be out of character for Appellant to mix Tylenol 3 with clonazepam and it was not in her character to take "a bunch of pills." (RR3: 17, 22-23). Most notably, it was not in her character to take any medication and drive around all night. (RR3: 23-24).

**Thomas Gordan**, a registered nurse at Ennis Regional Hospital, recalls caring for Appellant on February 14, 2014. (RR3: 24-25). Appellant was treated by EMS at the scene where Appellant was complaining of neck pain. (RR3: 32). According to Gordan, it is not unusual to experience delayed pain from an accident. (RR3: 33). Gordan admitted Appellant's vitals including blood pressure, pulse, respiration, temperature and oxygenation were "very good" upon arrival via ambulance at 05:59. (RR3: 26-27). He did not believe her blood pressure was depressed and he agreed it would be unusual to order a urinalysis exam where no medication was prescribed by a doctor. (RR3: 27, 29). Gordon also stated a urinalysis would only be ordered to determine what type of medications a patient may have taken in an effort not to blend drugs. (RR3: 28). Gordon finally testified that "opiates" is not a depressant. (RR3: 29).

**Dwain Fuller**, a forensic toxicologist, testified to his experience on the effects of drugs on a human being and to DWI impairment. (RR3: 34, 39). Mr. Fuller has a bachelor's in chemistry and is board certified by the National Registry of Certified Chemists as a toxicological chemist. (RR3: 35). He is also a Fellow of the American Academy of Forensic Sciences where he served as a chair of the toxicology section. (RR3: 36). Mr. Fuller has published on numerous methods for doing different types of drug analyses including the interpretation of urine drug screenings. (RR3: 36). In comparison, DRE training, in general, is more of a "lay approach trying to identify a class of drug," while Mr. Fuller's training is in both chemistry and pharmacology and pharmacodynamics. (RR3: 56).

Mr. Fuller reviewed the records in this case, including the medical records, and concluded that the amino acid test conducted at Ennis Regional Medical was a test meant to screen for medical diagnostic use only, and should always be confirmed. (RR3: 39-41). In Mr. Fuller's opinion, you can't even tell if it's really and truly a positive drug screen given there was no confirmation. Mr. Fuller also confirmed there was no presence of depressants found in the screening made of Appellant. (RR3: 43).

As to the impairment, Mr. Fuller stated he watched many field sobriety tests and felt the tests were very difficult for most people and the only one he took stock in was the HGN. (RR3: 50). If she in fact exhibited six clues on the HGN, then "it

12

is something to be somewhat concerned about," however, he wasn't certain how anyone could relate that to drugs that weren't found in her system. (RR3: 52). In fact, Mr. Fuller stated Tramadol, which is an opiate, or just "opiates," would not have caused HGN and he stated he found nothing in the records to indicate anything was wrong with her eyes. (RR3: 52-53, 55). In Mr. Fuller's opinion and based on his review of the documents, Appellant was not intoxicated due to the introduction of drugs. (RR3: 44-45).

**Martha Aracely Richter**, Appellant, testified that on the night of February 13, 2014, she had an argument with her boyfriend, Mr. Castillo. (RR3: 57-59). Following an altercation, she packed her clothes and medication and left her home around 10:00 pm after she decided to leave her boyfriend. (RR3: 61-62). When she left her home, she was originally headed to speak to her boyfriend at his job near Lovefield Airport. (RR3: 64, 80). She recalled stopping at a gas station at about 2:30 am to charge her cell phone. (RR3: 64, 82). When she left, she recalled arguing with her boyfriend on the cell phone, crying and trying to concentrate on her GPS as she was driving along the highway going south toward San Antonio. (RR3: 64, 66-67). Appellant states she was tired and got lost when lost control of her vehicle and had an accident around 4:00 am which caused the airbag to deploy. (RR3: 66-68, 82-83). Officer Ruiz received the dispatch call to the accident along Interstate 45. (RR2: 16).

13

Appellant testified she did not recall telling Mr. Castillo that she was trying to kill herself. (RR3: 68). She testified she takes medication for arthritis. (RR3: 62). Appellant's medications included: Tramadol, Clonazepam and Tylenol with codeine. (RR3: 72). She recalled having taken Tylenol with codeine and maybe Clonazepam early in the morning of February 13, 2014, the day before the accident. (RR3: 72-74, 76). She did not believe she was intoxicated at the time of the accident. (RR3: 86).

**Punishment and Sentencing:** Following the trial, the court found Appellant guilty of DWI as alleged in the Information. (RR3: 117). Punishment was assessed at 180 days confinement in the county jail, probated for 2 years and a $300 fine. (RR3: 132-136) (CR: 7, 105). The trial court sentenced Appellant in accord with the punishment. (RR3: 141). Judgment was entered on June 30, 2015. (CR: 105). Notice of appeal was timely filed. (CR: 109).

## SUMMARY OF ARGUMENTS

**Issue 1:**     The trial court erred in allowing a Trooper Henry to testify as an expert witness for the State.  The Trooper was not qualified to offer that testimony required by Tex. R. Evid. 702 given he was not certified on the date of the arrest nor did he have sufficient training or experience to render an opinion.

**Issue 2:**     The trial court abused its discretion by admitting inadmissible hearsay upon hearsay.  Specifically, the trial court permitted the State to elicit testimony from the arresting officer about what Appellant's boyfriend was told from Appellant over the phone.  This testimony was clearly offered to prove the truth of the matter asserted. No hearsay exception or other evidentiary exemption is applicable. Because the record fails to contain reasonable assurance that the error did not influence the trier of fact, admission of the hearsay cannot be considered harmless.

**Issue 3:**     The evidence is insufficient to support a conviction for driving while intoxication.  The state offered no credible medical or scientific expert testimony given the state's DRE opinion of intoxication due to drugs was rebutted and refuted by Appellant's forensic toxicologist expert. Additionally, the evidence was insufficient given it was error to admit and rely on a presumptive field test to show intoxication without expert testimony as to how the test was conducted and the test was never verified by a certified lab.

15

# ARGUMENTS

## Issue No. 1

### *The trial court abused its discretion when it allowed testimony from a Trooper who was not qualified as an expert.*

As first presented in the foregoing issues, Rule 702 of the Texas Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. The trial court must make three different inquiries before determining if a witness may testify as an expert: (1) the witness must qualify as an expert based on knowledge, skill, experience, training, or education, (2) the subject matter must be appropriate for expert testimony, and (3) the expert testimony must actually assist the fact finder in deciding the case. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006).

When determining if a person is qualified to testify as an expert witness, the court must determine that (1) the witness has sufficient background in a particular field, and (2) the witness's background is central to the matter about which the expert witness will give an opinion. *Vela*, 209 S.W.3d at 131. Texas Rule of Evidence 705(c) provides that if the court finds that the underlying facts or data do not provide a sufficient basis for the expert's opinion, then the opinion is inadmissible. TEX. R.

16

EVID. 705(c). This inquiry goes to the reliability of the expert's testimony. *Vela*, 209 S.W.3d at 133.

In Appellant's case, the State called Trooper Craig Henry to testify as a drug recognition expert (DRE). (RR2: 98-150). The court held a hearing to determine whether Trooper Henry was qualified. (RR2: 98-115). During the hearing, Henry testified that he worked as a trooper for the Department of Public Safety (DPS) for three years, and that he had been a trained as a DRE only since September, 2014, approximately eight months before the date of Appellant's trial and seven months after Appellant's arrest. (RR2: 98). Henry did not testify to the number of DWI arrests he had personally made.

Henry summarized the training he received to become a DRE and the twelve-step process he uses to conduct a proper drug recognition evaluation. (RR2: 102). He stated he was qualified to evaluate and look over another officer's DWI stop and make a determination whether the person was under the influence of certain drugs. (RR2: 106). At the close of the voir dire examination of Henry, Appellant moved to disqualify him arguing the trooper conducted the test improperly given his limited experience. (RR2: 115). The court overruled the objection. (RR2: 115).

At trial, Henry testified he was not certified as a DRE at the time he stopped Appellant and he did not conduct all of the twelve steps followed in a DRE evaluation. Out of the 12 steps, he testified no breath test was given, there was no

17

odor of alcohol and he did not interview Officer Ruiz, but he did review the video in this case. (RR2: 117-118). He also stated he did not complete a preliminary exam like checking for pulse and eyes. (RR2: 118). While he did testify HGN was present, he did admit he made that determination by relying on Officer's Ruiz statement that there was HGN.[1] (RR2: 119).

Henry next testified he did not personally observe the divided attention tests but he did rely on the video and Officer Ruiz' testimony as to how well those performed. (RR2: 118, 121). Finally, Henry confirmed he did not personally check for vital signs, pulse, blood pressure and body temperature. (RR2: 122). Again, he testified he had to rely on the medical reports. (RR2: 122). Out of the 12 step DRE process, he only reviewed 9 out of 12 steps,[2] but in fact, only considered five. (RR2: 135, 143, 145). The Trooper determined "based on his expert opinion" that Appellant was intoxicated due to CNS depressants. (RR2: 129).

The trial court abused its discretion because the record demonstrates that the technique to identify the presence of a category of drugs was not applied properly in this case. Appellant did not have the benefit of all the twelve steps generally used by DREs to form an opinion that Appellant had ingested a depressant. Henry had no

---

[1] Officer Ruiz testified he conducted the first portion of the HGN, lack of smooth pursuit, and he testified there were two clues, however, the court sustained the defense objection not to allow any further testimony as to the HGN. (RR2: 26-28). Thus, Officer Ruiz never testified to his accuracy or reliability of the HGN.

[2] Trooper Henry stated he did not personally conduct the HGN and only relied on Officer's Ruiz statements regarding the HGN. (RR2: 139).

18

toxicology, chemistry or pharmacology experience. (RR2: 112). He never testified as to how many full DRE exams he had completed.

Because the trial court erred to the extent it allowed Henry to express opinions as a DRE during the trial, there was error that affected Appellant's substantial rights. See Tex. R. App. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010), cert. denied. "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the verdict." *Id.* If the improperly admitted evidence did not influence the trier of fact or "had but a slight effect upon its deliberations, such non-constitutional error is harmless." Id.

Not only did the State fail to establish that Henry was qualified to testify as an expert, the record does not support a finding that his testimony was reliable. In fact, out of the 12 step DRE process, he only reviewed 9 out of 12 steps, but in fact, only considered five. (RR2: 135, 143, 145). Out of the nine steps, he had no personal knowledge about what Officer Ruiz saw on the night of the arrest and admitted he "trusted that the medical equipment used was accurate." (RR2: 148, 150).

The trial court permitted Henry to testify in detail about Appellant's prescription medication, the purposes of the medications, the side effects of the medications, how the medications affect the human body, and how the medications affected Appellant specifically. (RR2: 116, 129-135). In fact, Henry testified

Appellant was intoxicated due the introduction of depressants. (RR2: 134-135). Henry's testimony was rebutted and refuted by Appellant's expert, Mr. Dwain Fuller, a forensic toxicologist.

If Officer Ruiz had found 6 six on the HGN, Mr. Fuller further testified that 6 six clues on the HGN would generally make him believe there were some issues, however, both Henry and Mr. Fuller agreed you could not see nystagmus from the video and the Officer did not testify to the accuracy of the HGN exam. (RR2: 26-28, 139) (RR3: 50). Mr. Fuller further agreed six clues on the HGN was not related to any drugs found and in fact, opiates and tramadol do not cause HGN. (RR3: 52, 55). In his opinion, Henry's training took a "lay approach to identify a class of drugs" and that upon his review of the medical records, Appellant was not intoxicated due to the introduction of drugs. (RR3: 44-45, 55-56).

Finally, Henry also stated he was not certified at the time of Appellant's stop and had only been certified since September, 2014, which was only for the last eight months prior to Appellant's trial. (RR2: 98). His testimony had a "substantial and injurious" effect on the court's deliberations. The reliability of his opinion was not established because of his limited training and background and given he was not even certified on the date of Appellant's arrest. This witness's testimony should have been excluded.

**Issue No. 2**

20

*The trial court improperly overruled Appellant's hearsay objection.*

**Facts**

During its case in chief, Officer Ruiz testified Appellant's boyfriend, Mr. Castillo, had stopped by the scene on the night of Appellant's arrest. (RR2: 32). The state asked him if he had spoken to Mr. Castillo. (RR2: 32). Officer Ruiz stated he did speak to Mr. Castillo and the state wanted to know what Mr. Castillo had told him. (RR2: 32). Appellant made a hearsay objection. (RR2: 32). Specifically, the following occurred:

Q:   And were you able to speak with Mr. Castillo?

A:   Yes, sir.

Q:   And what did he tell you?

A:   He stated that---

[**DEFENSE**]: Objection to hearsay.

[**STATE**]:   Your Honor, at this time, those statements from Mr. Castillo aren't being used for the truth of the matter but rather to assist the Court in what Mr. Ruiz was doing in his investigations. Mr. Castillo's actually here to testify in its own words as to whether those statements are true or not. So at this time, Your Honor, I don't believe the State's eliciting these statements to prove the truth of the matter.

[**COURT**]:   Give me a temporal context when the statements were made.

[**STATE**]:   On scene –

[**COURT**]: Well, through the witness. Ask the Witness when the statements were made, as far as, if it's not going to the truth of the matter asserted, then there has to be some other reason it's being offered.

(RR2: 32-33).

Following the objection, the state elicited that the officer spoke to Mr. Castillo when he arrived on the scene. (RR2: 34). The officer was unable to recall the exact time Mr. Castillo arrived, however, he did recall speaking to Mr. Castillo. (RR3: 34). The following occurred:

Q: And why were you speaking with him?

A: He came to the scene and wanted to check on her and he told – he stated again ---

[**DEFENSE**]: Objection to Hearsay.

[**Witness**]: --- that she had taken a lot of medications.

[**COURT**]: I'm going to sustain that objection.

(RR2: 34).

After this exchange, Officer Ruiz stated he remained on the scene to finish up his accident report. (RR3: 35). At this time, the state asked to admit State's Exhibit #7, a video of the arresting officer which included an exchange between the officer and the paramedics: "I just talked to the husband/boyfriend, uh, she's taken a lot of pills." (RR2: 35) (St. Exh. 7). The defense objected again to all hearsay statements.

22

The court overruled the objection and permitted the video to play in its entirety. (RR2: 36).

**Standard of Review**

Appellate courts review a trial court's admission or exclusion of evidence under an abuse of discretion standard. *Burden v. State,* 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). Appellant recognizes that the trial court's ruling will not usually be disturbed on appeal if it is within the zone of reasonable disagreement. *Id.*

**Law on Hearsay**

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Hearsay is generally inadmissible unless it falls within an exception to the rule. TEX. R. EVID. 802. Unless the statement falls within one of the enumerated hearsay exceptions listed in TEX. R. EVID. 803, the evidence is inadmissible.[3] The proponent of the evidence has the burden of showing which

---

[3] The hearsay exceptions are: (1) Present Sense Impression; (2) Excited Utterance; (3) The Existing Mental, Emotional, or Physical Condition; (4) Statements for Purposes of Medical Diagnosis or Treatment; (5) Recorded Recollection; (6) Records of Regularly Conducted Activity; (7) Absence of Entry in Records Kept in Accordance With the Provisions of Paragraph (6); (8) Public Records and Reports; (9) Records of Vital Statistics; (10) Absence of Public Record; (11) Records of Religious Organizations; (12) Marriage, Baptismal, and Similar Certificates; (13) Family Records; (14) Records of Documents Affecting an Interest in Property; (15) Statements in Documents Affecting an Interest in Property; (16) Statements in Ancient Documents; (17) Market Reports, Commercial Publications; (18) Learned Treatises; (19) Reputation Concerning Personal or Family History; (20) Reputation Concerning Boundaries or General History; (21) Reputation as to Character; (22) Judgment of a Previous Conviction; (23) Judgment as to Personal, Family, or General History, or Boundaries; and (24) Statement Against Interest. TEX. R. EVID. 803.

exception to the general hearsay rule applies.  *Martinez v. State*, 178 S.W.3d 806, 815 (Tex. Crim. App. 2005).

**Analysis**

Here, Mr. Castillo's statement as to what Appellant told him about the medication she had taken was hearsay upon hearsay.  Based on the prosecutor's question to Officer Ortiz, Mr. Castillo was relaying a conversation he had with Appellant prior to her arrest.  Appellant's statement, as told by Officer Ruiz to the paramedics by Mr. Castillo who relayed a conversation he had with Appellant, was an out of court statement offered by the state to prove the truth of the matter asserted. The statements constituted double-hearsay.  Inside Officer Ruiz's statement to the paramedics was Mr. Castillo's statement about what was told to him by Appellant. Moreover, this statement, as well as the double hearsay, did not fall within any of the numerated hearsay exceptions.  TEX. R. EVID. 803.

When the video showed Mr. Ruiz telling the paramedics what Mr. Castillo relayed from Appellant, Appellant was harmed. Through this double hearsay statement, the State introduced new facts into evidence; namely that Appellant told Mr. Castillo that she had taken a lot medication. (RR2: 34) (St. Exh. 7). These facts, established through double hearsay, were prejudicial to Appellant.  In fact, Mr. Castillo later testified he never recalled making that statement. (RR2: 89).

But for Officer Ruiz repeating Mr. Castillo's statements about what Appellant told him about the medication, the officer may well have concluded her disorientation was due to the accident given that the officer testified he did not smell alcohol. (RR2: 19, 24, 56). In fact, Officer Ruiz testified that he spoke to Mr. Castillo "right when [he] encountered Ms. Richter" which was even before the paramedics arrived to treat her. (RR2: 20, 33) (St. Exh. 7). According to Officer Ruiz, he had her medically cleared before he performed the SFSTs. (RR2: 20). Thus, Appellant's objection to hearsay was proper. The court abused its discretion when it overruled her objection.

## Issue No. 3

### *The evidence is legally insufficient to support Appellant's conviction for Driving While Intoxicated.*

## A. Standard of Review:

Legal sufficiency of the evidence is measured by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319, n.12 (1979), *i.e.*, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." In following this standard, the Court of Criminal Appeals has stated:

> The reviewing court must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

25

facts." In reviewing the sufficiency of the evidence … [courts] … should look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." Each fact need not point directly and independently to the guilt of the Appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.

*Hooper v. State*, 214 S.W.3d 9, 13-14 (Tex. Crim. App. 2007).

## B: **Elements of a DWI Charge**:

The essential elements of the offense should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge here would require the state show a person committed the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PEN. CODE ANN. § 49.04(a). The term "intoxicated" means (1) not having the normal use of mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or any substance into the body, or (2) having an alcohol concentration of .08 or more. *Id*.

## C: **No Evidence of Intoxication**

Here, Officer Ruiz testified he responded to a 911 call in reference to a single vehicle crash along Interstate 45 and found Appellant lost and disoriented. (RR2: 13, 15-16, 18-19). Ruiz did not smell alcohol, so based on his experience, he concluded

26

"intoxication by drug." (RR2: 19). Appellant testified she was sleepy, tired and crying while using her phone at the time of the accident. (RR3: 65-68).

Ruiz testified he found medications in Appellant's purse including Codeine, Celexa and Lioresal. (RR2: 22). According to Appellant, she only took medication occasionally when needed and that she had taken one pill the night before. (RR3: 72). There was no testimony as to the length of time between the ingestion of any medications and the time of the urinalysis test. Appellant complied with Ruiz to do the standard field sobriety tests ("SFST"). (RR2: 20). During her SFST, Appellant performed poorly on both the walk-and-turn test and the one leg stand. (RR2: 28-29). Appellant stated she was disoriented from an airbag deployment and had medical issues which caused her to perform poorly on the SFST. (RR2: 66, 79).

While Ruiz concluded Appellant was intoxicated due to the introduction of drugs, he did not arrest Appellant. (RR2: 30). Ruiz testified that because Appellant had expressed she felt depressed, he told her to either "go get some medical attention or she would get arrested." (RR2: 30-31). Appellant went to the hospital. (RR2: 31). While being treated for pain, the RN at Ennis Regional Hospital testified her vitals were "very good" upon arrival via ambulance at 05:43. (CR: 58). Despite good vital signs, the doctor orders a urinalysis following triage which included a drug history at 05:48. (CR: 57). By 06:04 a urine screen was ordered when Appellant was placed in a gown and put in a bed. (CR: 55, 58). According to the RN, in his opinion, it

27

was unusual to order a urinalysis exam where no medication was prescribed by a doctor. (RR3: 27, 29).

By 06:10 the backboard was removed and a peripheral IV was inserted for the urine to be collected and blood was drawn. (CR: 58). At 07:06 the urine was collected and sent to the lab and by 07:16, a presumptive urine screen was completed. (CR: 59, 66). In his opinion, no depressants were found. (RR3: 29). Mr. Fuller, a forensic toxicologist, testified he reviewed Appellant's medical records and noted that an "amino acid test," also known as the urinalysis test, is meant for screening purposes, not medical diagnostic use, and as such, should have been confirmed before being used for any legal purpose. (RR3: 34, 40-42).

In an effort to link the basis of Officer Ruiz' opinion of intoxication with that of the urinalysis test, the state called Trooper Henry to testify as a DRE. (RR2: 98-150). While the court determined he was qualified to testify as an expert, the court heard he had three years experience in law enforcement and had not been a DRE on the day of Appellant's accident. (RR2: 98). In addition, he had not conducted a full DRE evaluation and relied on Officer Ruiz' accuracy of the HGN, and never interviewed Officer Ruiz. (RR2: 117-118, 135, 143, 145). Henry determined that based on his opinion, Appellant was intoxicated due to CNS depressants. (RR2: 129).

Henry had no toxicology, chemistry or pharmacology experience. (RR2: 112). He never testified as to how many full DRE exams he had completed. He had no personal knowledge as to the accuracy or reliability of the medical exams, but testified he "trusted that the medical equipment used was accurate." (RR2: 148, 150). According to Mr. Fuller, a forensic toxicologist, Appellant was not intoxicated due to depressants. (RR3: 42, 44-45).

Although Officer Ruiz stated he had found 6 six on the HGN, Mr. Fuller agreed you could not see Appellant's eyes on the video and the Officer did not testify to the accuracy of the HGN exam. (RR3: 50) (RR2: 26-28). Mr. Fuller, further agreed six clues on the HGN was not related to any drugs found and in fact, opiates and tramadol do not cause HGN. (RR3: 52, 55). In his opinion, Henry's training takes a "lay approach to identify a class of drugs" and that upon his review of the medical records, Appellant was not intoxicated due to the introduction of drugs. (RR3: 44-45, 55-56).

## D: Conclusion

In summation, viewed in the light most favorable to the verdict, the evidence shows only that Appellant was found in her car somewhat disoriented following an accident along the highway. She was tired, sleepy and crying following an argument with her boyfriend which accounts for why she was lost. She cooperated with police and completed the SFST. Following a poor performance according to the officer,

he orders her to go with the ambulance or go with him to the station. She opted to go the hospital where she was assessed and a presumptive urinalysis screen and blood test is ordered. The presumptive urine test comes back positive for opiates. The state fails to obtain a copy of the blood results and does not provide an expert to explain the presumptive urine screen. In fact, Trooper Henry, testified there was no confirmation of depressants.

Henry had limited training and experience and was not certified as a DRE on the date of the accident. The defense brought a forensic toxicologist who testified Henry merely received a "lay approach to identify a class of drugs." Fuller reviewed the medical records and determined Appellant was not intoxicated due to the introduction of drugs. There is, therefore, no evidence that Appellant was operating the vehicle while intoxicated. The evidence is therefore legally insufficient to sustain Appellant's conviction and the judgment should be reversed and an order of acquittal entered.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this Court will reverse and remand for a new trial. Further, Appellant prays for any such relief to which he may be entitled.

Respectfully submitted,

**/S/ Julissa Martinez**

30

_____

Juanita Bravo Edgecomb
State Bar No. 240295259
306 Sixth Street
Waxahachie, Texas 75165
(972) 845-7131 *(phone)*
(469) 342-8057 (*fax)*
*edgelaw@live.com*

## *Certificate of Compliance*

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the total number of words in the document, excluding those contents set out in the rule, is 5,844 words (including textboxes, footnotes and endnotes), as computed by the program used to prepare the document, Microsoft Word 2010.

**/S/ Julissa Martinez**

Julissa Martinez

## *Certificate of Service*

I hereby certify that a true copy of the foregoing brief was served on the Ellis County District Attorney's Office (Appellate Section), 109 South Jackson Street, Waxahachie, Texas, 75165, by e-service on October 20, 2015.

**/S/ Julissa Martinez**

Julissa Martinez